Belknap
No. 2000-487

THE STATE OF NEW HAMPSHIRE

v.

WAYNE B. SARGENT

Argued: September 11, 2002
Opinion Issued: November 26, 2002

*Philip T. McLaughlin*, attorney general (*Laura E. B. Lombardi*, attorney, on the brief and orally), for the State.

*Mark A. Larsen*, public defender, of Manchester, by brief and orally, for the defendant.

NADEAU, J. For the second time, the defendant, Wayne B. Sargent, appeals three convictions for aggravated felonious sexual assault, *see* RSA 632-A:2 (1996 & Supp. 2002), and six convictions for felonious sexual assault, *see* RSA 632-A:3 (1996 & Supp. 2002), entered after a jury trial in the Superior Court (*Smukler*, J.). The defendant challenges three pre-trial evidentiary rulings, two of which he argues prevented his expert witness from fully developing an expert opinion consistent with the defendant's theory of defense, and one which he argues limited the scope of his expert witness's testimony at trial. We affirm.

We set out the background underlying this appeal in *State v. Sargent*, 144 N.H. 103 (1999), and we derive the following from the trial court's record on remand. In 1996 and 1997, the State indicted the defendant on numerous charges for sexually assaulting his two minor step-children and one of their minor friends between September 1994 and March 1995. Following a trial in 1997, a jury convicted the defendant on all charges.

In 1999, we reversed the defendant's convictions and remanded his case for a new trial because we found the trial court erred in excluding the defendant's proposed "expert testimony on the possibility of false memory implantation in children through improper and suggestive interviewing techniques." *Sargent*, 144 N.H. at 103. On remand, the trial court admitted the defendant's expert testimony but limited its scope, prohibiting the defendant's expert from testifying about the effects that suggestive interview techniques may have had upon the reliability of the memories of the three child victims testifying at trial. The trial court additionally denied the defendant's discovery motions for *in camera* review of the victims' division for children, youth and families (DCYF), education and Guardian Ad Litem (GAL) records, and denied his motion to depose various State witnesses.

The trial court found, among other things, that the privileged records the defendant requested contained no exculpatory information based upon the court's review of the records at the defendant's first trial, and the defendant failed to show any necessity for the requested depositions because he could get the same information elsewhere. The defendant appeals each of these rulings, arguing they effectively prevented him from presenting his theory of the case at trial and prevented his expert witness from presenting a fully-informed opinion to the jury. Because each of these

issues deals with either the admissibility or the discoverability of evidence, we review the trial court's rulings to decide only whether they constitute unsustainable exercises of discretion. *State v. Lambert*, 147 N.H. 295, 296 (2001). To prevail, the defendant must show the trial court's rulings were clearly untenable or unreasonable to the prejudice of his case. *Id.*

The defendant first argues the trial court applied the wrong legal standard in denying his request for *in camera* review and disclosure of the victims' DCYF, education and GAL records. For the trial court to conduct an *in camera* review of the minor victims' confidential records, the defendant first had to show a reasonable probability that the records contained information that was material and relevant to his stated defense. *State v. Hoag*, 145 N.H. 47, 49 (2000). This "threshold showing . . . is not unduly high." *Id.* (quotation omitted). It only requires the defendant to "meaningfully articulate how the information sought is relevant and material to his defense." *Id.* (quotation omitted). "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought." *Id.* (quotation omitted). If the defendant makes this showing, then the trial court must review the requested information *in camera* to see if the file actually contains information that is "essential and reasonably necessary to the defense at trial." *Id.* at 50 (quotation omitted).

The defendant argues the trial court erred in applying this standard because, instead of asking whether the records were material and relevant to his stated defense that the victims' statements were the products of improper and suggestive interviewing techniques, it inquired only into whether the requested records were exculpatory to him. In denying the defendant's requests, however, the trial court was in the unique position of already having reviewed *in camera* many of the requested records at the defendant's first trial, as well as having heard the testimony of the victims and many of their confidential record keepers at trial. The trial court also knew the defendant received a second trial solely to admit expert testimony on whether his victims were subjected to improper and suggestive interviewing techniques, and not to give him an opportunity to conduct further discovery.

The defendant's request for *in camera* review claimed the victims' testimony at the first trial showed they had spoken with DCYF workers many times and they may have made statements that were inconsistent with their trial testimony. Thus, the defendant sought to review the victims' DCYF records for such inconsistent statements to see if they may have been caused by improper interviewing techniques. Likewise, the

defendant's request stated that the victims' trial testimony showed they made additional undisclosed statements to their counselors and the GAL, so the defendant also sought access to these records to determine if improper interviewing techniques had been used.

In response, the trial court reviewed each of the requested records *in camera* or recalled its earlier *in camera* review of the records from the defendant's first trial, except when it found the defendant failed to articulate a sufficient basis for further review. After conducting its review, the trial court disclosed one additional set of counseling records to the defendant, which were essential and reasonably necessary to the defense at trial. The court denied his request in all other respects, however, because the requested records contained no exculpatory information.

■Based upon the record before us, we find the trial court properly applied the law and sustainably exercised its discretion in limiting disclosure of these privileged records to the defendant. *See Hoag*, 145 N.H. at 49-50. The defendant's requests were based upon the existence of additional statements by the victims and potential inconsistencies with their testimony, which, alone, have never been sufficient bases to trigger even an *in camera* review of privileged documents. *See Hoag*, 145 N.H. at 50; *see also State v. Taylor*, 139 N.H. 96, 98 (1994). Thus, the trial court's review and limited disclosure of the requested records to the defendant were reasonable.

■Additionally, we find that the trial court neither improperly created a new privilege for the victims' GAL records nor expanded the confidentiality provisions of System-wide Guardian Ad Litem Application, Certification and Practice Rule 2.4.5. The trial court properly found that the GAL, as a court-appointed special advocate (CASA advocate) and not as an attorney, shared a limited privilege with the victims. *See* RSA 458:17-a, II (Supp. 2001). The trial court also appropriately imposed an additional requirement that the CASA advocate disclose any inconsistent statements of the victims to the defendant, and then adhere to the professional discovery obligations of attorneys regarding the victims' statements for the remainder of the trial. *See* SYSTEM-WIDE GAL APPLICATION, CERTIFICATION AND PRACTICE Rules 1.4, 2.4.2(c), 2.4.5. The defendant does not claim the CASA advocate violated either of these requirements, and each requirement was imposed at the reasonable discretion of the trial judge. *See* SYSTEM-WIDE GAL APPLICATION, CERTIFICATION AND PRACTICE Rule 2.4.2(c).

■ The defendant next argues the trial court erred by denying his motion to depose numerous State witnesses who interviewed the victims. The defendant argues that the depositions were necessary for his expert witness to form an opinion as to the suggestiveness of the interview techniques each witness used with the minor victims in this case. In denying the defendant's motion, the trial court found he had alternative sources for some of the information he was seeking, and that he failed to show any necessity for the remainder of his requested depositions. A request for depositions is governed by the factors set forth in RSA 517:13 (1997) and remains within the sound discretion of the trial court. A defendant has no unqualified due process right to compel depositions of witnesses in a criminal prosecution. *See State v. Hilton*, 144 N.H. 470, 473 (1999). Rather, the trial court may authorize depositions if they are necessary to ensure a fair trial, to avoid surprise, or for some other good cause. *Id.* Necessity for depositions is determined on a case-by-case basis and depends upon the complexity of the issues at trial, the other avenues for the defendant to acquire the same information or other special circumstances. *Id.*

The record reflects that the trial court appropriately weighed the statutory factors, and properly found the defendant met neither his burden of proving necessity nor his burden of proving the information was unavailable from other sources. *See id.* The defendant sought to depose not only the GAL and each police officer who interviewed the victims, but also the victims' family members to whom the victims disclosed the abuse. Meanwhile, the defendant had access to the trial testimony of several of these witnesses, as well as the police and GAL reports of their interviews with the victims. Moreover, many of the people the defendant sought to depose were not even potential witnesses at trial.

■ The trial court found the defendant gave no reasons for needing to depose certain witnesses and that he had alternative access to the same information for the remaining witnesses through transcripts of discovery depositions and witness testimony from the defendant's first trial, at which the witnesses already had been subject to cross-examination. The trial court also found the defendant had access to witness statements and interviews, each of which reflected the inconsistencies he sought to establish. *See Hilton*, 144 N.H. at 474. Finally, the trial court found that the defendant's requests to depose the victims' family members were mere "fishing expeditions" that would neither lead to evidence of improperly suggestive interviewing techniques nor be necessary to ensure a fair trial. *See Taylor*, 139 N.H. at 98. We agree with these conclusions, which are

supported by the record, and we conclude that the trial court properly exercised its discretion in denying the defendant's requests.

The defendant finally argues the trial court improperly limited the scope of his expert witness's testimony by prohibiting testimony about how suggestive interview techniques affected the reliability of these child victims' memories and trial testimony. The defendant asserts the trial court's ruling improperly confused testimonial credibility with memory reliability, the latter being a determination that cannot be made by the average juror who is inexperienced with the trauma caused by childhood sexual assault. We find the defendant's argument makes a distinction without a difference, because both testimonial reliability and credibility are issues to be determined by a jury.

In the defendant's first appeal, we found that "the proper protocols and techniques used to interview child witnesses [are] matter[s] not within the knowledge and understanding of the average juror." *Sargent*, 144 N.H. at 106. We noted: "This case was essentially a credibility contest between the children and the defendant. We are not convinced beyond a reasonable doubt that the excluded expert testimony would not have influenced the jury's assessment of the children's credibility." *Id.* Thus, we remanded the case to allow the defendant to present expert testimony on the proper protocols and techniques used to interview child victims of sexual assault. *Id.* We did so because expert testimony concerning the peculiar behaviors of abused children or the dangers of false memory implantation from improper interview techniques is admissible "[to] *aid a jury in evaluating the reliability of a child's recollections.*" *Id.* at 105 (emphasis added). We find that such a reliability determination is the same as a credibility determination, and both are an essential part of a jury's evaluation of a child victim's veracity about being abused.

The defendant knew at his second trial that the scope of his expert's testimony would be limited, because we do not allow expert psychological testimony to prove whether a child has been sexually abused and we do not allow expert psychological testimony concerning the veracity of a child's testimony about being abused. *See State v. Cressey*, 137 N.H. 402, 412 (1993). This is consistent with our past cases finding expert testimony on the general characteristics or tendencies of abused children or other abuse victims to be admissible, while testimony about specific details based upon the individual facts or psychological analysis of any victim is not. *See, e.g., State v. DeCosta*, 146 N.H. 405, 408-09 (2001); *State v. Searles*, 141 N.H. 224, 228-29 (1996); *State v. Cressey*, 137 N.H. 402; *see also State v. Hungerford*, 142 N.H. 110 (1997).

■Inconsistencies in testimony and failure to remember aspects of some observed or experienced event present questions of veracity reserved for the jury. In this case, the trial court permitted the defendant to present testimony about: (1) the use of improper and suggestive interviewing techniques; (2) the result such techniques may have upon a child; and (3) whether improper or suggestive techniques were used in this case. These rulings allowed the expert witness to testify about precisely what improper interviewing techniques are and about what the general effects of such techniques upon a child are, but prevented the expert from testifying about how such techniques affected the reliability or veracity of these victims' memories, which was the ultimate issue for the jury. We find that these limits were reasonable and consistent with our instructions on remand.

The defendant raised other issues in his notice of appeal. Because he did not brief them, however, we deem them waived. *See State v. Mountjoy*, 142 N.H. 648, 652 (1998).

*Affirmed.*

BROCK, C.J., and DALIANIS, J., concurred.