Rockingham
No. 2010-140

THE STATE OF NEW HAMPSHIRE

v.

PETER EATON

Argued: May 12, 2011
Opinion Issued: June 28, 2011

*Michael A. Delaney*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Pamela E. Phelan*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HICKS, J. The defendant, Peter Eaton, appeals his conviction by a jury of four counts of aggravated felonious sexual assault, *see* RSA 632-A:2 (2007) (amended 2008), one count of felonious sexual assault, *see* RSA 632-A:3 (2007) (amended 2008), and one count of indecent exposure, *see* RSA 645:1 (2007) (amended 2008). On appeal, he argues that the Trial Court (*Nadeau,* J.) erred when it denied his pre-trial motions: (1) for *in camera* review of the victim's counseling records; (2) for production of records from the Raymond Police Department; and (3) to dismiss for lack of a speedy trial. He also argues that the Superior Court (*Nicolosi,* J.) erred when it sentenced him on two indictments alleging alternative theories of liability. We affirm in part, reverse in part, vacate in part, and remand.

The defendant first argues that the trial court erred when it denied his motion for *in camera* review of the victim's counseling records. The defendant is alleged to have sexually assaulted the victim between the fall of 2003 and June 2005, when he lived with the victim and her family. He was originally indicted for these assaults in October 2005. In November 2005, the defendant filed a motion for *in camera* review of the victim's counseling records. The State did not object to this motion, and, on December 7, 2005, the court granted it. On January 10, 2006, the trial court issued an order stating that it had reviewed "the victim's mental health records from Seacoast Mental Health Center" and had determined that they "contain no discoverable material." Accordingly, the court ordered that they would remain under seal.

The defendant moved for reconsideration, explaining that the victim's counseling records had "already been put at issue" because the police spoke to the victim's counselor, Susan Chase, and because some of the indictments were based solely upon the allegations the victim made to Chase. The defendant specified that the counseling records particularly relevant to the case were from July 2005. On January 31, 2006, the trial court denied the motion for reconsideration. The 2005 charges against the defendant were *nolle prossed* on March 30, 2006.

The defendant was re-indicted on October 7, 2008. In February 2009, he filed another motion for *in camera* review of the victim's counseling records. In this motion, he alleged the following. The victim first made allegations against him on June 28, 2005. On July 5, 2005, she saw Dr. Wendy Gladstone, who recommended counseling. The victim first met Chase, her counselor at Seacoast Mental Health, on July 14, 2005. Later

that day, Chase told the police that the victim had used anatomical dolls in disclosing that she had been anally penetrated by the defendant. On July 26, 2005, the victim told Chase that the defendant had penetrated her buttocks with a vibrator. The defendant asserted that the victim "remained in counseling to address these issues for an unknown amount of time." He further noted that the victim made statements to her counselor about his conduct that differed from those she made to others. The defendant acknowledged that he had already requested the documents in his prior motion for *in camera* review, the court had ordered *in camera* review and then had denied him access to them. Based upon these assertions, the defendant asked the court to order the State "to produce counseling and psychiatric records of [the victim] from December 2003." The trial court denied the defendant's motion on the ground that the defense had "not made the requisite showing under [*State v. Gagne*, 136 N.H. 101 (1992)]."

On appeal, the defendant argues that the trial court erred because he "made the threshold showing required for *in camera* review of the records that existed as of February 2006 . . . as well as any counseling records generated since then, including any counseling records from the time period when the State *nolle prossed* the 2005 case and reinstated the charges on October 2008."

■ We review the trial court's decision under our unsustainable exercise of discretion standard. *State v. Sargent*, 148 N.H. 571, 572-73 (2002). The defendant's request for an *in camera* review of the victim's counseling records is governed by *State v. Gagne*. *See State v. Ellsworth*, 142 N.H. 710, 713 (1998). "[T]o trigger an *in camera* review of privileged or confidential records, the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." *Gagne*, 136 N.H. at 105. This threshold showing "is not unduly high." *State v. Graham*, 142 N.H. 357, 363 (1997). It requires the defendant only to "meaningfully articulate how the information sought is relevant and material to his defense." *Id.*; *see Sargent*, 148 N.H. at 573. "At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought." *Graham*, 142 N.H. at 363 (quotation omitted). "Although ·a defendant is not required to state the 'precise nature' of the information sought, he must provide the court with a logical factual basis for his request, based on information independently obtained, that the [information sought] may yield relevant evidence." *Ellsworth*, 142 N.H. at 714 (citation omitted).

The defendant argues, in effect, that he met the *Gagne* standard to require *in camera* review of two sets of records: (1) those generated from

December 2003 until July 5, 2005 (the date on which counseling was suggested to the victim); and (2) those generated from July 5, 2005, until October 7, 2008 (the date of his re-indictment).

We first address whether the defendant met the *Gagne* standard with respect to counseling records generated from December 2003 until July 5, 2005. The defendant's February 2009 motion alleges only that counseling was first recommended to the victim on July 5, 2005. It does not articulate any logical factual basis for his belief that the victim was even in counseling at any time before July 2005. *See Ellsworth*, 142 N.H. at 714; *see also State v. Hoag*, 145 N.H. 47, 49-50 (2000). Accordingly, we conclude that the defendant has not met the *Gagne* standard as to any records generated before July 5, 2005.

As to the victim's counseling records from July 5, 2005, until October 7, 2008, when he was re-indicted, we conclude that the defendant has met the *Gagne* standard as a matter of law.

The defendant's motion for *in camera* review alleged that counseling was first recommended to the victim on July 5, 2005, and that the victim discussed her allegations against the defendant with her counselor several times in 2005. His motion also stated that the victim remained in counseling "for an unknown amount of time" after July 2005. His belief, he explained, was based upon the victim's mother's statement "on August 18, 2005 that her children were in intensive counseling to address [the] . . . alleged abuse." He further noted that the victim's statements to her counselor differed from those she made to others. These allegations were sufficient to provide the court with a logical factual basis for his request for the victim's counseling records generated from July 5, 2005, until October 2008. *See Ellsworth*, 142 N.H. at 714; *see also Hoag*, 145 N.H. at 49-50.

*State v. Hoag* is instructive on this issue. The defendant in *Hoag* sought the victim's counseling records, to the extent that any existed. *Hoag*, 145 N.H. at 49. The victim in *Hoag*, like the victim in this matter, gave differing accounts of the defendant's actions. *Id.* The defendant in *Hoag* did not know for certain that the victim had sought counseling, but he reasonably believed this to be the case because, as the State conceded, counseling had been recommended to the victim. *Id.* at 50. Similarly, in the instant matter, the defendant does not know for certain that the victim continued in her counseling with Chase after July 2005, but he reasonably believes this to be the case based upon the mother's statement that in August 2005, the victim was "in intensive counseling to address [the] . . . alleged abuse." Just as the defendant's assertions in *Hoag* were sufficient to trigger *in camera* review, so too are the defendant's assertions here sufficient. The defendant in this

case reasonably believes that the victim remained in counseling after July 5, 2005, and reasonably believes that this counseling concerned his alleged conduct. *See id.*

The trial court, however, has already reviewed a portion of these records *in camera.* The trial court granted the defendant's first motion for *in camera* review of the victim's counseling records on December 7, 2005. Although the records are not part of the appellate record, we infer that, at the very least, counseling records that existed as of December 7, 2005, were produced for the trial court's *in camera* review. The record on appeal also demonstrates that such a review took place. The trial court's January 10, 2006 order stated specifically: "The court has reviewed the victim's mental health records from Seacoast Mental Health Center." Indeed, the defendant's February 2009 motion acknowledged this: "The requested records were requested previously and this Court ordered that they be produced for *in camera* review."

■ At oral argument, the defendant asserted that re-review of the records was necessary so that he could obtain appellate review of the trial court's determination that they contain no discoverable information. He has not, however, demonstrated that he ever made this argument to the trial court, thereby preserving it for our review. *See Bean v. Red Oak Prop. Mgmt.*, 151 N.H. 248, 250 (2004). The defendant's February 2009 motion failed to articulate *any* basis for the trial court to re-examine the counseling records it had previously reviewed. Given the defendant's failure to inform the trial court of this (or any other) reason for re-examining them, we decline to fault the trial court for not doing so. *See Sargent*, 148 N.H. at 574; *cf. Mortgage Specialists v. Davey*, 153 N.H. 764, 786 (2006) (purpose of preservation rule is to give trial forums "an opportunity to rule on issues and to correct errors before they are presented to the appellate court" (quotation omitted)).

We conclude, however, that the trial court did err when it declined to review *in camera* the victim's counseling records generated after December 7, 2005. On remand, the trial court should determine whether the victim attended counseling after December 7, 2005 through November 2, 2009 (the date of commencement of the defendant's trial), and, if so, should review her counseling records *in camera* to determine whether they contain evidence that would have been essential and reasonably necessary to the defense at trial. *Hoag*, 149 N.H. at 50. If the trial court determines that the records contain such evidence, it should order a new trial unless it finds that the error in not admitting the evidence in the first trial was harmless beyond a reasonable doubt. *Id.*

The defendant next asserts that the trial court erred by denying him access to certain records from the Raymond Police Department. We review the trial court's decision under our unsustainable exercise of discretion standard. *Sargent*, 148 N.H. at 572-73. Having reviewed the withheld records, we conclude that the trial court did not unsustainably exercise its discretion when it found that the withheld records did not contain information that was essential and reasonably necessary to the defendant's defense. *See Gagne*, 136 N.H. at 106.

The defendant next contends he was denied his right to a speedy trial guaranteed by the State and Federal Constitutions because the State *nolle prossed* the 2005 indictments in bad faith. We first address the defendant's claim under our State Constitution and cite federal cases for guidance only. *See State v. Ball*, 124 N.H. 226, 231, 233 (1983).

To determine whether a defendant's right to a speedy trial has been violated, we apply the four-part test articulated in *Barker v. Wingo*, 407 U.S. 514, 530-32 (1972). *State v. Allen*, 150 N.H. 290, 292 (2003). The test requires that we balance four factors: (1) the length of the delay; (2) the reason for the delay; (3) the defendant's assertion of his right to a speedy trial; and (4) the prejudice to the defendant caused by the delay. *Id.; see Barker*, 407 U.S. at 530-32. We defer to the trial court's factual findings unless those findings are clearly erroneous, and consider *de novo* the court's conclusions of law with respect to those factual findings. *State v. Lamarche*, 157 N.H. 337, 342-43 (2008).

"The threshold inquiry is the length of the relevant delay." *Allen*, 150 N.H. at 292. If the length of the delay is not presumptively prejudicial, we do not examine the remaining three factors of the *Barker* test. *Id.* Because the State concedes that the delay in this case is presumptively prejudicial, we assume that this is so, and examine the remaining three *Barker* factors. *See Lamarche*, 157 N.H. at 343.

The second factor requires that we assess why the trial was delayed and how much weight to give the delay. *Id.* "To the extent that valid reasons cause delay, the delay does not count against the state at all. So too delay that is caused by the defendant." *Id.* (quotation and brackets omitted).

To assess this factor, we examine several time periods. We first examine the five-month period between the defendant's original indictment in October 2005 and the *nolle prosequi* of those charges in March 2006. The record on appeal shows that most, if not all, of this delay was caused by the defendant. *See State v. Fletcher*, 135 N.H. 605, 607-08 (1992). In November 2005, the defendant moved for *in camera* review of the victim's counseling records. The court granted this motion in December 2005 and reviewed the

documents in January 2006. The defendant moved for reconsideration of the court's denial of production of the documents, and the court denied this motion on January 31, 2006. Additionally, in February 2006, the defendant moved for *in camera* review of other documents, including police reports. The court granted the motion on February 28, 2006, and reviewed the records on March 23, 2006. The 2005 charges were *nolle prossed* only a week later. Accordingly, most, if not all, of the five-month delay between the October 2005 charges and the *nolle prosequi* in March 2006 does not count against the State. *See Lamarche*, 157 N.H. at 343.

We next address the three-year delay between the *nolle prosequi* of the original 2005 indictments and the defendant's re-indictment in 2008. The State argues that this period should not be counted in measuring the length of the delay in this case because it *nolle prossed* the 2005 indictments in good faith. *See Allen*, 150 N.H. at 293. "We have held that when the State enters a *nolle prosequi* in good faith and later recharges a defendant, we do not include the time between the *nolle prosequi* and the refiling for speedy trial analysis." *Id.* The trial court specifically found that the State did not engage in "improper conduct" when it *nolle prossed* the 2005 charges. As there is evidence in the record to support this finding, we uphold it, and do not count the three years between the *nolle prosequi* of the 2005 indictments and the defendant's re-indictment in 2008 in our speedy trial analysis.

The next time period is the thirteen months between the defendant's re-indictment in October 2008 and his trial in November 2009. The trial court found that some of this delay was attributable to the defendant. The record amply supports this finding as well. Beginning in February 2009, the defendant filed several motions for *in camera* review of certain documents as well as a motion to dismiss on due process grounds. These motions were finally resolved at the end of June 2009. The defendant moved to dismiss specifically for violation of his speedy trial right in May 2009. In June 2009, the defendant moved for a continuance. In late September 2009, he supplemented his speedy trial motion. The trial court ruled on the defendant's speedy trial motion on October 23, 2009, and trial occurred shortly thereafter. Accordingly, much of this delay was attributable to the defendant, and does not count against the State. *See id.*

Under the third factor, we consider the strength of a defendant's assertion of his right to a speedy trial. *Barker*, 407 U.S. at 531-32. Here, the defendant first asserted his right to a speedy trial in his May 2009 motion to dismiss, seven months after he was re-indicted. This factor, therefore, weighs in his favor.

The final factor requires us to determine whether and to what extent the defendant suffered prejudice, including whether the delay resulted in an oppressive pretrial incarceration, anxiety, or an impaired defense. *Lamarche*, 157 N.H. at 344. The defendant asserts that he suffered prejudice because it impaired his ability to cross-examine the victim because her memory had faded. However, "[t]he passage of time, and the resulting impairment of memories," is insufficient to establish prejudice. *State v. Little*, 121 N.H. 765, 773 (1981) (quotation omitted). "Memories begin to dim almost immediately after an event occurs, and if that were to be a sufficient basis to hold that a defendant had been prejudiced to the point where he had been denied his right to a speedy trial, we would have to disregard the considerations we normally place upon the delay with regard to the practical administration of justice." *Id.* (quotation omitted).

The defendant also claims to have been prejudiced because, although he was incarcerated on other charges when the charges were re-filed, their re-filing caused him "anxiety." The fact that the defendant was already incarcerated "substantially mitigates any prejudice attributable to his anxiety." *Lamarche*, 157 N.H. at 344.

In balancing the four *Barker* factors, we conclude that the defendant was not denied his right to a speedy trial under the State Constitution. Because the Federal Constitution is no more protective of the defendant than the State Constitution under these circumstances, *compare Allen*, 150 N.H. at 292, *with Barker*, 407 U.S. at 530, we reach the same conclusion under the Federal Constitution. Accordingly, we uphold the trial court's denial of the motion to dismiss.

Finally, the defendant argues that the trial court erred when it sentenced him on two indictments that alleged alternative theories of liability. Because the State concedes that the court so erred, we vacate the court's sentence on the lesser charge, indictment number 08-S-2680, and remand for further proceedings consistent with this order.

*Affirmed in part; reversed in part; vacated in part; and remanded.*

DALIANIS, C.J., and DUGGAN, CONBOY and LYNN, JJ., concurred.