**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2016-0024, State of New Hampshire v. Richard Harris, the court on November 15, 2016, issued the following order:**

Having considered the briefs and record submitted on appeal, we conclude that oral argument is unnecessary in this case. See Sup. Ct. R. 18(1). We affirm.

The defendant, Richard Harris, appeals his conviction, following a jury trial in Superior Court (Bornstein, J.), on three charges of simple assault. See RSA 631:2-a (2016). He argues that he was subjected to multiplicitous charges in violation of the Double Jeopardy Clauses of the State and Federal Constitutions. We address these arguments first under the State Constitution and rely on federal law only to aid in our analysis. State v. Ball, 124 N.H. 226, 231-33 (1983). He further argues that the trial court erred by denying his motion for in camera review of the victim's medical and counseling records, and by instructing the jury on flight.

We first address the defendant's double jeopardy arguments. Part I, Article 16 of the State Constitution protects against successive prosecutions for the same offense after either an acquittal or a conviction, and against multiple punishments for the same offense. State v. Glenn, 160 N.H. 480, 486 (2010). We have stated that the State may prosecute multiple charges that constitute the same offense in a single proceeding, consistent with Part I, Article 16, so long as it alleges distinct, alternative methods of committing the offense, and does not seek multiple sentences. State v. Nickles, 144 N.H. 673, 676 (2000); see also State v. Sanborn, 168 N.H. 400, 424 (2015) (finding no double jeopardy violation where defendant was convicted of manslaughter and a lesser including offense because he was sentenced only for manslaughter). We have also stated, however, that the State "cannot simultaneously pursue multiple charges that are entirely identical in fact as well as in law." Nickles, 144 N.H. at 676 (quotation omitted). "Two offenses will be considered the same unless each requires proof of an element that the other does not." Id. at 677 (quotation and brackets omitted). In applying this test, "our focus is upon whether proof of the elements of the crimes as charged will in actuality require a difference in evidence." Glenn, 160 N.H. at 486 (quotation omitted).

The criminal charges in this case arise out of an altercation between the defendant and the victim that occurred in the defendant's home during the night of October 20, 2014. The victim testified that, during the course of an argument in the defendant's home office, the defendant leapt from his chair,

grabbed her wrists with one hand, grabbed her throat and jaw with the other hand, and squeezed her jaw and throat while pressing her against the office door. He then released her, opened the office door, and pushed her into an adjoining workshop. The altercation continued, and at one point, the defendant grabbed the victim's wrists with each of his hands and "pinned" her against the workshop door that led into the house. The defendant then opened the workshop door, and threw the victim into a hallway. The victim then slammed the door and yelled at the defendant to leave her alone. After watching the defendant go back into his office, she turned around and began to walk down the hallway. At that point, she testified that the defendant came up from behind her, wrapped his arm around her throat so that his elbow was in front of her in a "chokehold" position, and began to "crush" her throat to the point that she could not breathe and saw "flashes of light." The altercation ended when one of the defendant's children appeared in the hallway.

Based upon these allegations, the State brought six separate charges. First, it brought two second degree assault indictments alleging that the defendant knowingly engaged in strangulation by actually applying pressure to the victim's throat or neck in a manner that impeded her breathing or blood flow; one indictment alleged that he committed the crime by grabbing or pushing the victim's throat, while the other alleged that he did so by putting his arm around her neck. See RSA 631:2, I(f), II(c) (2016). It also brought four simple assault charges, each alleging that the defendant knowingly caused unprivileged physical contact to the victim, see RSA 631:2-a, I(a), by: (1) grabbing the victim's jaw or throat in the office (grabbing charge); (2) putting his arm around her neck in a "chokehold" in the hallway (chokehold charge); (3) pushing the victim (pushing charge); and (4) pinning the victim against the workshop door (pinning charge). In opposing the defendant's motion to dismiss on double jeopardy grounds, the State represented, and the trial court agreed, that the grabbing and chokehold charges alleged alternative theories to the two second degree assault charges, and that if the jury were to convict on all four of those charges, it would withdraw the grabbing and chokehold charges. With respect to the pushing charge, the State clarified in its closing argument that that charge concerned the victim's testimony that the defendant had pushed her from the office into the workshop. Ultimately, the jury acquitted the defendant of the two second degree assault charges and the grabbing charge, and convicted him of the remaining three simple assault charges.

On appeal, the defendant first argues that, as charged, proof of the second degree assault charges and the grabbing and chokehold charges did not in actuality require a difference in evidence. Rather, he contends that the elements of simple assault, as charged, were subsumed by the elements of second degree assault, and that, therefore, the grabbing and chokehold charges constituted "lesser included offenses" of the second degree assault charges. Under the circumstances, he argues that the simple assault charges were "entirely identical in fact as well as in the law" to the second degree assault charges, Nickles, 144 N.H. at 676 (quotation omitted), and that,

2

therefore, they were not "alternative" charges that the State was permitted to pursue in a single proceeding. We disagree.

At the outset, we note that the State does not question the continuing validity of the "same evidence" test articulated and applied in cases such as Nickles. Accordingly, we will assume, without deciding, that the same evidence test governs the analysis of whether the criminal charges in this case alleged the same or different crimes. But see State v. Locke, 166 N.H. 344, 352-53 (2014) (expressing doubt as to whether cases applying the same evidence test can be reconciled, and inviting parties in future cases to ask us to reconsider our double jeopardy jurisprudence consistent with principles of stare decisis).

Contrary to the defendant's argument, the grabbing and chokehold charges did not allege a lesser included offense of second degree assault. As charged, the second degree assault indictments each required proof that the defendant knowingly engaged in strangulation by actually applying pressure to the victim's throat or neck in a manner that impeded her breathing or blood flow, one by putting his arm around her neck, and the other by grabbing or pushing her throat. See RSA 631:2, I(f), II(c). By contrast, the simple assault charges each required proof that the defendant knowingly caused unprivileged physical contact to the victim, one by grabbing the victim's jaw or throat in the office, and the other by putting his arm around her neck in a chokehold in the hallway. See RSA 631:2-a, I(a). Thus, to prevail upon the second degree assault charges, the State was required to introduce evidence that the defendant applied sufficient pressure to the victim's throat or neck to impede her breathing or blood flow, an element not required to convict him of simple assault. To prevail upon the simple assault charges, the State was required to introduce evidence that the defendant's physical contact with the victim's throat was unprivileged, an element not required to prove second degree assault. See In re Nathan L., 146 N.H. 614, 620-21 (2001) (holding that simple assault is not a lesser included offense of second degree assault because the latter crime does not require proof of lack of privilege or physical contact). Accordingly, the second degree assault and simple assault charges alleged distinct offenses for purposes of Part I, Article 16. See Glenn, 160 N.H. at 486-87; Nickles, 144 N.H. at 678-80.

Even if the grabbing and chokehold charges alleged lesser included offenses of second degree assault, however, we agree with the State that any double jeopardy violation was in fact resolved by the jury's acquittal of the defendant on the second degree assault charges and the grabbing charge. See State v. Flynn, 151 N.H. 378, 386 (2004). Thus, the defendant was in fact subjected to only a single punishment for the chokehold charge. See Sanborn, 168 N.H. at 424; see also United States v. Webber, 255 F.3d 523, 527 (8th Cir. 2001); United States v. Nguyen, 28 F.3d 477, 482 (5th Cir. 1994).

The Federal Constitution offers the defendant no greater protection than does the State Constitution under these circumstances. See Glenn, 160 N.H.

3

at 488-89.  Accordingly, we reach the same result under the Federal Constitution as we do under the State Constitution.

The defendant next argues that the trial court violated double jeopardy by allowing the State to simultaneously prosecute the grabbing, pushing, and pinning charges.  The defendant contends that it is "possible to grab someone, push someone, and pin someone against a door all in the same act or motion" and, thus, that those charges "were factually indistinguishable from one another."  He further contends that, even if those charges alleged distinct acts, "it is uncontested that the entire physical exchange lasted a matter of seconds from start to finish, and all occurred within a few feet."  Thus, he argues that the charges constituted a single "unit of prosecution."

As noted above, the defendant was acquitted of the grabbing charge.  Thus, any double jeopardy violation with respect to that charge was necessarily resolved in his favor.  Flynn, 151 N.H. at 386.  Even if he had been convicted of it, however, we disagree that the grabbing, pushing, and pinning charges "were factually indistinguishable" and alleged only a single "unit of prosecution."

Under Part I, Article 16, we analyze "multiple punishment" cases, whether characterized as "double description" or "unit of prosecution" cases, by examining whether proof of the elements of the crimes as charged will require a difference in evidence.  State v. Ramsey, 166 N.H. 45, 51 (2014).  Here, the grabbing, pushing, and pinning charges each required a difference in evidence.  Specifically, the grabbing charge required proof that the defendant caused unprivileged physical contact by grabbing the victim's jaw or throat in the office; the pushing charge required proof that he caused unprivileged physical contact by pushing the victim; and the pinning charge required proof that he caused unprivileged physical contact by pinning the victim against the workshop door.  These charges were not "factually indistinguishable," but described three distinct acts of unprivileged physical contact.  Moreover, the evidence established that the actions occurred at three distinct times in three distinct places.  Accordingly, their simultaneous prosecution did not violate Part I, Article 16.  See id.

To the extent the defendant is arguing that the grabbing, pushing, and pinning charges constituted a single "unit of prosecution" for purposes of the Federal Constitution, we examine RSA 631:2-a, I(a) to determine the unit of prosecution intended by the legislature, and apply the so-called rule of lenity only if the statute is ambiguous.  See State v. Jennings, 155 N.H. 768, 777 (2007).  RSA 631:2-a, I(a) provides that "[a] person is guilty of simple assault if he . . . [p]urposely or knowingly causes bodily injury or unprivileged physical contact to another."  We have held that "the plain meaning of 'unprivileged physical contact' includes all physical contact not justified by law or consent." State v. Burke, 153 N.H. 361, 364 (2006).  The statute is drafted in the singular, unambiguously reflecting the legislature's intent to criminalize each

"unprivileged physical contact to another" knowingly caused by a defendant as a separate offense. See State v. Stratton, 132 N.H. 451, 455 (1989).

Accordingly, we agree with the State that the "unit of prosecution" under RSA 631:2-a, I(a) is a singular act of unprivileged physical contact. Each of the simple assault charges here alleged a separate and distinct act of unprivileged physical contact. To the extent the defendant claims that he lacked sufficient time to reflect and form new criminal intent between each of the charged acts, as noted above, the evidence at trial establishes that the charged assaults occurred sequentially, at three separate times and in three separate locations. Although the overall sequence of events may have been relatively brief, the evidence was more than sufficient for the jury to have found that the defendant had adequate time between each act to form the requisite state of mind. See State v. Krueger, 146 N.H. 541, 543 (2001). Accordingly, charging the three simple assaults separately did not violate the Federal Constitution.

We next address the defendant's argument that the trial court erred by denying his motion to conduct an in camera review of the victim's medical and counseling records. To trigger in camera review of confidential or privileged records, the defendant "must establish a reasonable probability that the records contain information that is material and relevant to his defense." State v. Gagne, 136 N.H. 101, 105 (1992). Although this threshold "is not unduly high," it requires the defendant "to meaningfully articulate how the information sought is relevant and material to his defense." State v. Eaton, 162 N.H. 190, 193 (2011) (quotations omitted).

> At a minimum, a defendant must present some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought. Although a defendant is not required to state the "precise nature" of the information sought, he must provide the court with a logical factual basis for his request, based on information independently obtained, that the information sought may yield relevant evidence.

Id. (quotations, citation, and brackets omitted). We review the trial court's decision for an unsustainable exercise of discretion. Id.

In this case, the defendant sought both medical and domestic violence counseling records for the victim. With respect to medical records, he alleged that the victim "has had medical issues related to adrenal glands – including and relating to her thyroid, neck, and adjacent organs," that she had "sought treatment for these and other menopause-related issues," that the "known adrenal/thyroid condition would certainly affect – or even potentially cause – any alleged marks or injuries to the [victim's] neck area," and that, therefore, "it is possible and likely that any alleged marks or injuries to [her] neck were due at least in part to her condition." With respect to counseling records, he alleged that the victim "may have engaged in counseling . . . with [an]

5

organization" for victims of domestic violence, that "part of this counseling related to Family Court litigation relevant to the charged conduct," that the victim had "testified inconsistently with prior statements" in the family court, and that, therefore, "there is a reasonable probability that the [counseling] records may indicate the cause for inconsistent statements, and/or" the extent to which her counselors had prepared her for trial. The trial court granted the motion only to the extent that the defendant sought medical records subsequent to the charged assaults. It otherwise found that the defendant had failed to trigger in camera review of the medical records under Gagne, or domestic violence counseling records under RSA 173-C:5 (2014).

On appeal, the defendant argues that he made a sufficient showing that the victim's medical records prior to the charged assaults might contain information explaining bruises appearing on her neck after the assaults so as to trigger in camera review. He further argues that he triggered in camera review by showing that the victim's counseling records may contain information explaining why she allegedly testified inconsistently with prior statements, or the extent to which she had been prepared for trial. Finally, he argues that the trial court erred by applying RSA 173-C:5 to his request for review of the counseling records because, he contends, the statutory standard is inconsistent with his constitutional rights as protected by Gagne.

Assuming, without deciding, that RSA 173-C:5 is inconsistent with Gagne, we conclude that the defendant failed to trigger in camera review of either the medical or the counseling records under Gagne. With respect to the medical records, the defendant offered no information, beyond conjecture, to establish why there might be a connection between adrenal gland, thyroid, or menopause issues and bruising on the victim's neck. Likewise, other than claiming that the victim sought assistance from a domestic violence support organization, and had "testified inconsistently with prior statements" in a domestic relations case, he offered no logical factual basis for the court to find that domestic violence counseling records may explain inconsistencies in testimony or the extent to which the victim was prepared for trial. Indeed, the defendant did not even articulate what the prior statements were, or how the victim's testimony differed from them. Under these circumstances, we cannot say that the trial court's decision was clearly untenable or unreasonable to the prejudice of the defendant's case. State v. Sargent, 148 N.H. 571, 573 (2002).

Finally, we address the defendant's argument that the trial court erred by instructing the jury that it could consider evidence that he fled the scene of the assaults as "tending to show feelings of guilt," and that it could "consider feelings of guilt as evidence tending to show actual guilt." Evidence of post-offense flight is probative of a defendant's consciousness of guilt. State v. Torrence, 134 N.H. 24, 27 (1991). The trial court may properly instruct the jury on flight if it "could reasonably infer that the defendant's flight reflected consciousness of guilt." State v. Littlefield, 152 N.H. 331, 335 (2005) (quotation omitted). "[F]light requires neither the physical act of running nor

6

the reaching of a far-away haven.  Flight manifestly does require, however, a purpose to avoid being observed or arrested." Id. (quotation omitted).  We review the trial court's decision to instruct the jury on flight for an unsustainable exercise of discretion.  Id. at 334.

In this case, the evidence establishes that immediately after the assaults, which occurred at night, the victim called her neighbors and asked them to call the police, put the defendant's minor children, who had witnessed the altercation, to bed, climbed out a living room window, and waited in the woods for approximately an hour and a half until the police arrived.  When the police arrived, they could not find the defendant in the house or on the property.  His car was, however, in the driveway.  The only persons inside the house were the children.  At some point later in the evening, after the police had left, they found the defendant driving away from the home and stopped him.  In the car was the defendant's backpack containing a change of clothes, shaving cream, a razor, a knife, and a year's supply of medication.

On appeal, the defendant argues that the trial court erred because the "undisputed evidence" was that, following the assaults, he went back to his office, tried to work, went for a walk, and then went out to get some food because he is a diabetic.  According to the defendant, he packed a bag because he thought he might need to stay elsewhere that evening.

Contrary to the defendant's argument, it was well within the jury's province to assess the credibility of his account of his whereabouts.  Because there was sufficient evidence from which the jury could have found that he fled following the assaults, we conclude that the trial court's decision to instruct the jury on flight was a sustainable exercise of discretion.  Id. at 334.

<u>Affirmed</u>.

Dalianis, C.J., and Hicks, Conboy, Lynn, and Bassett, JJ., concurred.

**Eileen Fox,
Clerk**

7