NOTICE: This opinion is subject to motions for rehearing under Rule 22 as well as formal revision before publication in the New Hampshire Reports. Readers are requested to notify the Reporter, Supreme Court of New Hampshire, One Charles Doe Drive, Concord, New Hampshire 03301, of any editorial errors in order that corrections may be made before the opinion goes to press. Errors may be reported by e-mail at the following address: reporter@courts.state.nh.us. Opinions are available on the Internet by 9:00 a.m. on the morning of their release. The direct address of the court's home page is: http://www.courts.state.nh.us/supreme.

THE SUPREME COURT OF NEW HAMPSHIRE

_____

Rockingham
No. 2018-0608

THE STATE OF NEW HAMPSHIRE

v.

STEPHEN GIRARD

Argued: February 12, 2020
Opinion Issued: October 16, 2020

Gordon J. MacDonald, attorney general (Sean R. Locke, assistant attorney general, on the brief and orally), for the State.

Thomas Barnard, senior assistant appellate defender, of Concord, on the brief and orally, for the defendant.

HANTZ MARCONI, J. The defendant, Stephen Girard, was charged with two counts of misuse of a computer or network, see RSA 638:17, IV (2016), two counts of indecent exposure, see RSA 645:1, II(a) (2016), and two counts of witness tampering, see RSA 641:5 (2016). Following a bench trial in the Superior Court (Delker, J.), he was acquitted of the witness tampering charges and convicted on the remaining indecent exposure and computer-related charges. On appeal, he argues that the trial court unsustainably exercised its discretion when it denied his motion to sever the computer-related indictments from the indecent exposure indictments. He also requests that we review family counseling records provided to the trial court for its in camera review to determine whether the court erred in failing to disclose additional material. We

conclude that the trial court's ruling on the defendant's motion to sever is sustainable. We affirm the defendant's convictions on the charges of misuse of a computer.

Having considered the supplemental memoranda that we requested from the parties, we also clarify the standard to be applied by trial courts when conducting in camera review of privileged materials and remand this case to the trial court to determine whether this clarification affects its original disclosure ruling, and for such other relief as it may deem appropriate.

I

We briefly set forth the facts necessary to decide the issues before us. In September 2016, the minor victim disclosed to her mother that the defendant had sent a picture of his erect penis to her. When the victim was subsequently interviewed at the Child Advocacy Center, she reported that the defendant had also masturbated in front of her. The defendant was indicted on two counts of indecent exposure as a result of these acts. The indictments described the acts as occurring between January 1, 2016 and September 11, 2016.

After the defendant learned that the victim's mother had reported to the police his acts of indecent exposure, he sent the following e-mail to her cousin: "You better tell [the victim's mother] to knock it off. [The victim]'s stuff is a lie. If [the mother] doesn't knock it off, I will sue for slander. Tell her to keep her mouth shut. I didn't do anything." Shortly thereafter, the defendant accessed e-mail and Facebook accounts of the victim's mother, without her permission, and changed the passwords on the accounts. These acts resulted in the computer-related charges. The defendant's e-mail communication to the mother's cousin and his unauthorized access to the mother's computer accounts resulted in the witness tampering charges.

In a pretrial ruling addressing a pending motion in limine filed by the State,[1] the trial court observed that the State had not formally joined the charges for trial and that the defendant had not objected to joinder. The court concluded that the pending charges were logically and factually connected and joined them. See N.H. R. Crim. P. 20.

---

[1] The trial court described the State's motion as seeking "to admit evidence of certain conduct and statements of the defendant pursuant to New Hampshire Rule of Evidence 404(b)." The court described four topics addressed in the State's motion: (1) the defendant's prior conduct with the minor victim, including discussions about sex and showing her pornographic videos; (2) the victim's disclosure to her mother; (3) the defendant's text message to his son apologizing for what had happened; and (4) the defendant's violation of a court order by making the Facebook threats. The trial court found that the Facebook threat was "part of the conduct for which the defendant [was] charged" and ruled it admissible but denied the remainder of the State's request.

In response, the defendant filed a motion to sever, arguing that the three sets of charges were unrelated to one another, and that trying the indecent exposure charges with the computer-related offenses and witness tampering charges would "unfairly prejudice the jury" against him. He requested three separate trials.

In a review of its earlier ruling, the trial court found that the witness tampering and computer-related charges "most certainly fit the criteria outlined in" our case law regarding whether charges may be joined because they are logically and factually connected. The court found the "more difficult question" to be whether the indecent exposure charges were logically and factually connected to the witness tampering and computer-related charges. After applying the aforementioned criteria, the court ruled that "severing the charges would cause evidentiary chaos because . . . a significant overlap of the facts would be mutually admissible at the respective trials." The court concluded that "the purpose of joinder outweighs the marginal prejudice to the defendant in this instance," and denied the defendant's motion.

Prior to trial, the trial court became aware that the defendant had been indicted on sexual assault charges (Case 2) that involved a different victim who was related to the victim in this case. The court conducted an in camera review of family counseling records in Case 2 and found:

> Most of the sessions subject to disclosure relate to allegations that the defendant engaged in inappropriate contact with [the minor victim in this case] on social media. This conduct in turn appears to be the catalyst for disclosure following the September 2016 counseling session. It would raise form over substance[ ] to limit the disclosure of these records to counsel in [Case 2].

The court therefore sua sponte ordered disclosure of certain records to the parties in this case. After his motion to sever was denied, the defendant waived his right to a jury trial and proceeded to a bench trial. Following his convictions on the indecent exposure and computer-related charges, the defendant appealed.

II

A

The defendant first argues that the trial court erred when it denied his motion to sever the indecent exposure charges from the witness tampering and computer-related charges. The trial court's decision to join or sever charges is discretionary; we will affirm its ruling unless the decision constitutes an unsustainable exercise of discretion. State v. Brown, 159 N.H. 544, 555

3

(2009). To succeed on appeal, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. Id.

New Hampshire Rule of Criminal Procedure 20 provides in relevant part:

(a) Joinder of Offenses

   (1) Related Offenses. Two or more offenses are related if they:

   (A) Are alleged to have occurred during a single criminal episode; or
   (B) Constitute parts of a common scheme or plan; or
   (C) Are alleged to have occurred during separate criminal episodes, but nonetheless, are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct.

   (2) Joinder of Related Offenses for Trial. If a defendant is charged with two or more related offenses, either party may move for joinder of such charges. The trial judge shall join the charges for trial unless the trial judge determines that joinder is not in the best interests of justice.

N.H. R. Crim. P. 20. Accordingly, we must determine whether the record supports a finding that the charges were logically and factually connected. Whether offenses that occurred during separate criminal episodes are "logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct," id., is "largely determined by the close relationship among the offenses with respect to both the underlying charged conduct and the evidence to be used to prove the charges," Brown, 159 N.H. at 551.

In Brown, we set forth five factors that trial courts should consider when determining whether charges resulting from separate criminal episodes are related: "(1) the temporal and spatial relationship among the underlying charged acts; (2) the commonality of the victim(s) and/or participant(s) for the charged offenses; (3) the similarity in the defendant's mode of operation; (4) the duplication of law regarding the crimes charged; and (5) the duplication of witnesses, testimony and other evidence related to the offenses." Id. at 551-52. We cautioned that no single factor is dispositive on the question of relatedness. Id. at 552. Rather, they serve "as guidelines that must be sensibly applied in accord with the purposes of joinder." Id.

We also observed that the joint trial of offenses may benefit both the State and the defendant. Id. Joint trials avoid the duplication of evidence and may reduce inconvenience to victims and witnesses. Id. The potential benefits

4

to the defendant may include the faster disposition of pending charges, the possibility of concurrent sentences in the event of conviction, and protection against enhanced sentencing that might occur from separate trials.  Id.

The defendant observes that the State did not allege and the trial court did not find that the three pairs of charges occurred during a single criminal episode or that they constituted part of a common scheme or plan.  In a step-by-step review of the factors set forth in Brown, the defendant attempts to rebut the trial court's finding that the charges were related.  We are not persuaded.

The defendant first argues that the indecent exposure charges were not temporally or spatially related to the witness-tampering and computer charges.  He observes that the indecent exposure indictments alleged acts that occurred between January 1, 2016 and September 11, 2016; in contrast, the witness tampering and computer-related indictments alleged acts that occurred on or about September 29, 2016.  The trial court recognized that the acts that resulted in the indecent exposure charges occurred earlier than those that gave rise to the witness tampering and computer-related charges.  The court concluded, however, that the charges were related because the "computer related and witness tampering offenses would not have occurred absent the accusations of indecent exposure."  The defendant challenges this analysis, arguing: "The question is not whether a witness's allegations about one offense are somehow connected to another offense, but whether the offenses themselves are connected."  In this case, this is a distinction without a difference.  As we have observed, "offenses stemming from separate criminal episodes may be 'logically and factually connected' in a variety of ways that do not solely demonstrate a defendant's propensity to commit crime."  Id. at 553.  Here, the actions taken by the defendant after he learned of the victim's allegations resulted in the witness tampering and computer-related charges and were therefore properly deemed to be related.  See, e.g., State v. Roberts, 465 S.W.3d 899 (Mo. 2015) (concluding that assault and witness tampering charges were connected, in part, because acts leading to witness tampering charges would not have occurred in absence of assault).

The second Brown factor to be considered when determining whether charges arising from separate criminal episodes are related addresses the commonality of the victims and/or participants.  Brown, 159 N.H. at 552.  The defendant argues that "the indecent exposure charges did not have the same alleged victim or participants as the witness-tampering and computer charges."  Although he challenges each of the trial court's findings underlying its ultimate conclusion that "all of the charges concern the same or similar participants," we conclude that the trial court's conclusion is supported by the record.  At least one of the victims was affected by all of the defendant's acts: the minor victim's mother reported to the police the victim's disclosure and, as a result, became the target of the threats underlying the witness tampering charges and

the victim of the charges of the unauthorized use of a computer. In addition, trial of the charged offenses involved common witnesses, including the same investigating police officer. See, e.g., id. at 554 (joinder proper where charged offenses involved common witnesses and primarily the same police officers).

The third Brown factor addresses "the similarity in the defendant's mode of operation." Id. at 552. Although the trial court found that the defendant's mode of operation was dissimilar among the charges, the State argues that the defendant's "control over the family's technology" supports a finding that the third Brown criterion was met. It may well be that proficiency with technology enabled the defendant to take actions that underlay each of the pairs of charges. Considered in isolation, we do not find this to be a compelling factor, but when combined with the other connections between the charges, it supports joinder.

It appears undisputed that there is little duplication of the law regarding the crimes charged. Therefore, the fourth Brown factor provides no support for joining the charged offenses.

However, the potential for "duplication of witnesses, testimony and other evidence related to the offenses," id., the fifth Brown factor, is significant in this case. As we have observed, evidence related to the witness tampering and computer-related charges overlapped. Additionally, testimony by the same police officer was relevant to both the indecent exposure charges and the witness tampering charges.

Given the close relationship among the offenses with respect to both the underlying charged conduct and the evidence, including witness testimony, to be used to prove the charges, we conclude that the trial court did not unsustainably exercise its discretion when it denied the defendant's motion to sever the charges. See id. at 551; cf. 1A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 143 (4th ed. 2016) (joinder proper if it "allows the jury to see the complete set of facts about the alleged criminal enterprise").

B

The defendant also asks that we review the records of the family counseling sessions provided to the trial court for in camera review to determine whether the court erred in failing to disclose additional material contained therein. We note at the outset that this is not a case in which the State is in possession of the records sought by the defendant. Cf. Petition of State of N.H. (State v. Theodospoulos), 153 N.H. 318, 320-21 (2006). Rather, acknowledging that neither party had access to the privileged records, the defendant argues that the trial court may have erred when, after weighing his right to obtain disclosure of material helpful to his defense against the

6

statutory privilege that governs counseling records, the court determined that certain records did not meet the standard for disclosure. We review a trial court's ruling on the management of discovery to determine whether its decision is sustainable. State v. Guay, 162 N.H. 375, 385 (2011). When a defendant argues that a trial court's ruling is unsustainable, the defendant must demonstrate that the ruling was clearly unreasonable or untenable to the prejudice of his case. Id.

A criminal defendant's interest in obtaining disclosure of material helpful to his defense is rooted in the constitutional right to due process. See State v. Laurie, 139 N.H. 325, 327 (1995). In contrast, the psychotherapist-patient privilege, which is intended "to encourage full disclosure by the patient" to receive complete treatment, Petition of State of N.H. (State v. MacDonald), 162 N.H. 64, 67 (2011), has been established by statute. See RSA 330-A:32 (2017) (amended 2019).[2] Accordingly, to determine whether the psychotherapist-patient privilege must cede to due process considerations such that privileged records must be disclosed to a criminal defendant, the trial court must balance the confidentiality of such records against the defendant's right to obtain evidence helpful to his defense. State v. Gagne, 136 N.H. 101, 105 (1992). Upon a proper showing by the defendant, in camera review of such records enables the trial court to conduct that inquiry and decide whether due process requires disclosure of confidential records. See id.

A defendant's request to obtain privileged records raises two distinct, but related, issues. Id. at 104. The first issue is the standard to be met to obtain in camera review of the privileged material. Id. The second issue is the standard to be met for the defendant to obtain access to the records. Id. In Gagne we held that, to obtain in camera review, "the defendant must establish a reasonable probability that the records contain information that is material and relevant to his defense." Id. at 105.

With regard to the second issue, we also held in Gagne that the trial court must disclose to the defense confidential material that contains evidence that is "'essential and reasonably necessary' to the defense." Id. at 106. Almost twenty years later, Justice Lynn observed that "we have never elaborated upon or explained what this phrase means." Guay, 162 N.H. at 386 (Lynn, J., concurring specially). As the trial court in the case now before us noted, although its research yielded 29 cases in which we used the phrase "essential and reasonably necessary," it found no elucidation of that standard.

We observe that we have applied the "essential and reasonably necessary" standard in the context of the right to confrontation, provided by the Sixth Amendment to the United States Constitution, see State v. Farrow,

---

[2] The legislature has specifically provided that, in certain cases, disclosure of the relationships and communications governed by this statute may be required by court order. See RSA 330-A:32.

116 N.H. 731, 732-33 (1976), but we have more recently employed the same language when reviewing the nondisclosure of confidential records and the attendant standards in the context of due process requirements, see Gagne 136 N.H. at 105. Indeed, our due process analysis in Gagne suggests that we gave "essential and reasonably necessary" a different interpretation there than we did in Farrow. Compare Gagne, 136 N.H. at 104-05, with Farrow, 116 N.H. at 733.

Today, we clarify the meaning of the "essential and reasonably necessary" standard employed in Gagne to determine whether confidential records must be disclosed. See Gagne, 136 N.H. at 104, 106. Doing so allows us to harmonize the standards to be applied at each step of the inquiry and clarifies the task that trial counsel have in asserting, and trial courts have in determining, whether review and disclosure of confidential records is required in criminal cases.[3]

The first step of the inquiry is unaltered: to obtain in camera review of confidential records, the defendant must demonstrate that there is "a reasonable probability that the records contain information that is material and relevant to his defense." Id. at 105. To satisfy this standard, the defendant must present "some specific concern, based on more than bare conjecture, that, in reasonable probability, will be explained by the information sought." State v. Sargent, 148 N.H. 571, 573 (2002) (quotation omitted). As we have explained, this "threshold showing is not unduly high." Id. (quotation and ellipsis omitted).

Then, in reviewing the records, the trial court must determine if material and relevant "evidence is in fact contained in the records." State v. Graham, 142 N.H. 357, 363 (1997); see State v. Peseti, 65 P.3d 119, 129 (Haw. 2003) (requiring disclosure of privileged documents when they are, among other things, "relevant and material to the issue before the court" (quotation omitted). "Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." N.H. R. Ev. 401. The United States Supreme Court has explained that evidence "is material only if there is a reasonable probability that" disclosure of the evidence will produce a different result in the proceeding. United States v. Bagley, 473 U.S. 667, 682 (1985); see United States v. Agurs, 427 U.S. 97, 104 (1976) ("[I]mplicit in the requirement of materiality is a concern that the suppressed evidence might have affected the outcome of the trial."); State v. Olah, 184 A.3d 360, 368-69 (Me. 2018) (requiring disclosure of privileged records that are "favorable to the accused and material to guilt or punishment" (quotation omitted)). "A 'reasonable probability' is a probability sufficient to undermine confidence in the outcome." Bagley, 473 U.S. at 682.

---

[3] Whether or not privileged information is admissible at trial is an entirely different matter.

We note that, here, the trial court differentiated between general credibility evidence and other forms of impeachment evidence. We briefly address whether general credibility evidence should be a factor in this calculus. General credibility evidence has been described as "traditional proofs — offered through character or reputation witnesses and sometimes through proof of specific instances of misbehavior, especially prior convictions — to support an inference that the witness has a tendency to lie." White v. Coplan, 399 F.3d 18, 24 (1st Cir. 2005). As the First Circuit has observed, "modern evidence rules . . . have significantly restricted such evidence without totally precluding it in all cases." Id.; see N.H. R. Ev. 608. Our holding today does not expand that restriction. Nor do we hold that cross-examination as to general credibility evidence is entitled to the same level of constitutional protection as cross-examination on evidence adduced to show bias, motive or prejudice. See State v. Miller, 155 N.H. 246, 256 (2007). However, given our clarification, records containing general credibility evidence may be material and relevant thereby requiring disclosure.

In this case, the trial court reviewed the privileged records and found that records of "only four sessions relate either directly or implicitly to the allegations of the defendant's misconduct toward either of the [victims]. . . . A fifth session . . . may or may not relate to the accusations against the defendant." The court explained: "Because these five sessions relate either directly or implicitly to the defendant's misconduct toward the two alleged victims, the Court finds that these session[s] involve more than an attack on general credibility." Therefore, the trial court disclosed the records of all five sessions "out of an abundance of caution." It appears from its ruling that the court excluded information that related only to general credibility, and did not consider whether such information was material and relevant. On remand, the trial court should review the records with our clarification in mind.

The defendant is appealing his convictions on two counts of indecent exposure and two counts of misuse of a computer or network. We note that the minor victim's testimony in this case related to the charges of indecent exposure, not to the charges of misuse of a computer or network. After reviewing the privileged records as well as the record of the trial court proceedings, we conclude that, under the standard that we have clarified today, none of the undisclosed records contain information that is material and relevant to the defendant's defense to the charges of misuse of a computer or network.

As for the indecent exposure charges, with respect to which the minor victim's credibility was relevant, we conclude that remand is necessary to permit the trial court to conduct, in the first instance, a further in camera review of the privileged records under the standard that we have clarified today. If the court discovers records that are material and relevant to the defendant's defense at trial, it should order a new trial on the indecent

exposure charges unless the court finds that the error was harmless beyond a reasonable doubt.

Affirmed in part; and remanded.

HICKS, BASSETT, and DONOVAN, JJ., concurred.