Hillsborough-southern judicial district
No. 2008-517

THE STATE OF NEW HAMPSHIRE

v.

SEAN D. BROWN

Argued: June 11, 2009
Opinion Issued: December 31, 2009

*Kelly A. Ayotte*, attorney general (*Nicholas Cort*, assistant attorney general, on the brief and orally), for the State.

*Paul Borchardt*, assistant appellate defender, of Concord, on the brief and orally, for the defendant.

BRODERICK, C.J. The defendant, Sean D. Brown, appeals his convictions on four counts of the sale of a narcotic drug, *see* RSA 318-B:2 (2004) (amended 2008). He argues that the Superior Court (*Groff*, J.) erred in joining the charges under Superior Court Rule 97-A and in excluding evidence of a witness's prior conviction to impeach his testimony under New Hampshire Rule of Evidence 609(a)(2). We affirm.

## I

The record supports the following facts. The Nashua Police Department arranged to have an individual cooperate to purchase drugs from the defendant. The cooperating individual participated in controlled buys on four occasions, January 21, January 24, January 28, and February 9, 2005. Many of the facts underlying the controlled buys are substantially similar. Each occurred at arranged locations within approximately one mile of one another. Prior to each purchase, a police officer, Officer Collins, searched the cooperating individual for weapons, contraband and money to preserve the integrity of the controlled buy and then supplied him with a sum of money to buy drugs. The cooperating individual met the defendant at an established location and entered the defendant's gray car bearing New York license plates. After each drug buy, the cooperating individual gave the drugs to the same police officer, who again searched him for weapons, contraband and money, and found none.

Some differences exist in the evidence underlying the four charges. For the first buy, the cooperating individual identified the defendant's car as a gray Mazda or Maxima with New York license plates. For the latter three buys, police surveillance more specifically identified the defendant's car as bearing New York license plate CXV 7985. In addition, the police conducted video surveillance during the first two buys, and the cooperating individual

wore a wiretap for the second two buys. Further, while the cooperating individual identified the defendant as the seller for all four transactions, police officers witnessed the defendant in the driver's seat of the gray Mazda at the second, third and fourth buys. On another occasion, Officer Collins conducted surveillance of the defendant's residence and witnessed him driving the same gray Mazda sedan with the same New York license plates.

The defendant subsequently was charged with four counts of selling a narcotic drug under RSA 318-B:2, which were joined for trial over his objection. The jury found him guilty, and he appealed, arguing that the trial court erred in joining the charges against him. We reversed his convictions in *State v. Brown*, 156 N.H. 440 (2007), and remanded the case to the trial court. We rejected the State's argument that each controlled buy was part of a common plan and held that the trial court erred in joining the charges. *Brown*, 156 N.H. at 442-44. We also rejected the State's argument that because the evidence for each count would have been admissible at hypothetical separate trials under New Hampshire Rule of Evidence 404(b), the misjoinder constituted harmless error. *Id.* at 444-45.

In October 2007, before retrial, we adopted a new rule for joinder of offenses that became effective on January 1, 2008. *See* SUPER. CT. R. 97-A. The State again moved for joinder. Again, the defendant objected. The trial court joined the charges, concluding that they were related under the new joinder rule, and that joinder was not contrary to the best interests of justice. During his retrial, the defendant sought to use certain prior convictions of the cooperating individual, pursuant to Rule 609(a)(2), to impeach the cooperating individual's credibility. The trial court excluded the evidence. The defendant was convicted on all four counts, and this appeal followed.

II

The defendant challenges the trial court's decision to join the charges. Specifically, he contends that the trial court erred in concluding that the charges were related and that joinder would not offend the best interests of justice. *See* SUPER. CT. R. 97-A(I). We disagree.

Superior Court Rule 97-A governs the joinder of criminal offenses and distinguishes between charges that are related and unrelated. When a party moves to join related charges, the trial court is required to join them unless it "determines that joinder is not in the best interests of justice." SUPER. CT. R. 97-A(I)(B). The rule defines three categories of related offenses:

Two or more offenses are related if they:

(i) are alleged to have occurred during a single criminal episode; or

(ii) constitute parts of a common scheme or plan; or

(iii) are alleged to have occurred during separate criminal episodes, but nonetheless, are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct.

SUPER. CT. R. 97-A(I)(A). The trial court may join unrelated charges only upon written motion of the defendant or with the defendant's written consent, and "upon a showing that failure to try the charges together would constitute harassment or unduly consume the time or resources of the parties." SUPER. CT. R. 97-A(I)(C). Under such circumstances, the trial court is required to join the charges unless "joinder is not in the best interest of justice." *Id.*

In this case, the trial court concluded that although the four drug charges occurred during separate criminal episodes, they were related because they were logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct. *See* SUPER. CT. R. 97-A(I)(A)(iii). It reasoned:

[There were] a series of sales to the same person of the same drug in the same amount, involving the same police officers as the organizing force behind the sales, within a short time period. The court does not find that the recording of only two of the transactions is significant. It must be conceded that every joinder of criminal indictments involves to some extent an inference of a propensity to engage in criminal conduct, simply because a series of crimes, rather than an isolated crime, has been committed. However, the Court finds that, in this case, the logical and factual connection does not *solely* demonstrate propensity. It is strongly probative of intent. Indeed, if the crimes in this case may not be joined for trial, it is difficult to conceive of any separate criminal episodes which could be joined.

The defendant argues that the trial court erred, contending that the common underlying conduct and the common participants in the four drug transactions are not enough to establish the requisite logical and factual connection. He further argues that joinder prejudiced him by allowing the

State to rely upon the number of drug sales to demonstrate propensity and to use the stronger evidence of the later sales to improperly bolster its case for the earlier sales.

Historically, the decision to join multiple charges has been a discretionary matter left to the trial court. *See State v. Ramos*, 149 N.H. 118, 120 (2003). Thus, we will uphold the trial court's ruling unless the decision constitutes an unsustainable exercise of discretion. *Id.* To show the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was "clearly untenable or unreasonable to the prejudice of [the defendant's] case." *Id.* (quotation omitted).

## A

Before considering whether the trial court correctly concluded that the drug sales were related offenses under Superior Court Rule 97-A(I)(A)(iii), we first briefly outline our joinder jurisprudence to give context to the present dispute. In *Ramos*, we departed from our then-existing joinder precedent because it had proven "unworkable," *Ramos*, 149 N.H. at 121, and adopted the ABA standards for joinder and severance of criminal offenses, *id.* at 127. Distinguishing between related and unrelated charges, we defined three categories of related offenses, "same conduct," "single criminal episode," and "common plan," and also determined that unrelated offenses are those offenses "that are not related." *Id.* at 125.

Since *Ramos*, our opportunities for addressing relatedness have been confined largely to the "common plan" category, and we adopted the definition of common plan prescribed under New Hampshire Rule of Evidence 404(b). *See, e.g., State v. McIntyre*, 151 N.H. 465, 466-67 (2004); *State v. Schonarth*, 152 N.H. 560 (2005); *Petition of State of N.H. (State v. San Giovanni)*, 154 N.H. 671 (2007). In 2006, however, we expressed concern that the definition of relatedness under *Ramos* may have been construed to be exclusive. *See State v. Abram*, 153 N.H. 619, 627 (2006) ("we did not foreclose expansion of [the] definition [of related under *Ramos*]"). While we continued to endorse *Ramos*, we were troubled that our jurisprudence seemed to preclude joinder of charges that might otherwise be appropriate for joinder. *See id.* We noted, however, that "the court should not adopt new standards for joinder in criminal trials for an issue that is not squarely before [it] and the adoption of a new rule of criminal procedure should be accomplished through rulemaking." *Id.* at 627-28 (quotations and brackets omitted). Subsequently, in October 2007, we adopted Superior Court Rule 97-A, which became effective on January 1, 2008. This is our first opportunity to address the new joinder rule.

Turning to the governing law of this case, under Superior Court Rule 97-A, some offenses that occur during separate criminal episodes are

nevertheless related if they "are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct." SUPER. CT. R. 97-A(I)(A)(iii). This category for joinder is distinguished from other related offenses that "occur[] during a single criminal episode" or "constitute parts of a common scheme or plan." SUPER. CT. R. 97-A(I)(A)(i), (ii). Superior Court Rule 97-A, however, does not provide any factors or guidelines for determining when offenses that occur during separate criminal episodes bear a sufficient logical and factual connection so as to render them related. We rely upon joinder rules in other jurisdictions to aid us in developing guiding criteria for assessing whether offenses that occur during separate criminal episodes are related under Superior Court Rule 97-A(I)(A)(iii).

Both state and federal jurisdictions commonly provide a procedure for joining multiple offenses that occur during separate criminal episodes. *See* Hoar, *Joinder of Offenses: A New Rule for Oregon*, 66 OR. L. REV. 953, 972-81 (1987) (state and federal survey of joinder law and reviewing criteria for assessing relatedness); 5 LAFAVE ET AL., CRIMINAL PROCEDURE § 17.1(a), at 2-6 (3d ed. 2007) (discussion of state and federal joinder law and criteria for assessing relatedness). While the specific language of Superior Court Rule 97-A(I)(A)(iii) that defines related offenses that occur during separate criminal episodes is unique, it captures core aspects outlined in similar joinder jurisprudence. *See, e.g.,* Hoar, *supra* at 974 (connected transactions may include a series of occurrences, sometimes depending on the immediateness of their connection, or possibly on their logical relationship); *United States v. Hirschfeld*, 964 F.2d 318, 323 (4th Cir. 1992) ("connected transactions" implies a "logical relationship" and court examined the "logical and factual connections" between the charges), *cert. denied*, 506 U.S. 1087 (1993); *United States v. Ziegler*, No. CR 07-30024-01, 2007 WL 2022179, at *2 (D. S.D. 2007) (examining whether offenses of a "same or similar character" are "factually and logically related"). Therefore, we rely upon factors enunciated in both federal and state cases to inform the meaning of related offenses that occur during separate criminal episodes.

We hold that whether offenses that occur during separate criminal episodes are "logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct" is largely determined by the close relationship among the offenses with respect to both the underlying charged conduct and the evidence to be used to prove the charges. The following factors will aid in discerning whether charges arising from separate criminal episodes are related: (1) the temporal and spatial relationship among the underlying charged acts;

(2) the commonality of the victim(s) and/or participant(s) for the charged offenses; (3) the similarity in the defendant's mode of operation; (4) the duplication of law regarding the crimes charged; and (5) the duplication of witnesses, testimony and other evidence related to the offenses. *See United States v. Edgar*, 82 F.3d 499, 503 (1st Cir.) (multiple fraud charges were similar in modus operandi, temporal proximity and witnesses and testimony), *cert. denied*, 519 U.S. 870 (1996); *State v. Lewis*, 488 N.W.2d 518, 525 (Neb. 1992) (court reviewed temporal and spatial proximity between charged acts, as well as similarity of the modus operandi and type of crime); *State v. Hall*, 307 N.W.2d 289, 295 (Wis. 1981) (for separate criminal incidents to be joined, they must have a close relationship in time, place, modus operandi, scheme or plan).

No single factor is dispositive on the question of relatedness. Rather, the factors outlined above are intended to serve as guidelines that must be sensibly applied in accord with the purposes of joinder:

> The joint trial of offenses that share common factual circumstances enables the state to avoid the duplication of evidence required by separate trials, to reduce the inconvenience to victims and witnesses, to minimize the time required to dispose of the offenses, and to achieve a variety of other economies in connection with prosecutorial and judicial resources.

> The joint trial of offenses can also be beneficial to the defendant. A single trial will eliminate the harassment, trauma, expense, and prolonged publicity of multiple trials. A single trial may result in a faster disposition of all cases, may increase the possibility of concurrent sentences in the event of conviction, and may prevent the application of enhanced sentencing statutes.

LAFAVE, *supra*, at 6 (quotation omitted); *see also Ramos*, 149 N.H. at 124. The policy underlying joinder recognizes that "the government should not be put to the task of proving what is essentially the same set of facts more than once," and that "the defendant should be spared the task of defending more than once against what are essentially the same, or at least connected, charges." *Ramos*, 149 N.H. at 124 (quotations omitted). However, multiple offenses that involve different times, separate locations and distinct sets of witnesses and victims should not be joined because separate trials would not involve substantial duplication of evidence, repeated burdens on witnesses and victims, and increased drain on prosecutorial and judicial resources. *See id.* at 123. The factors we adopt today will enable the trial court to discern when offenses that occur during separate criminal episodes are related in accordance with the purposes of joinder sought to be

achieved by Superior Court Rule 97-A. Because the trial court may be required to join related offenses under Superior Court Rule 97-A over the defendant's objection, unless joinder is not in the best interests of justice, we conclude that a close relationship must exist among offenses alleged to have occurred during separate criminal episodes in order to consider them related. *See, e.g., Hall*, 307 N.W.2d at 295 (for separate criminal incidents to be joined, they must have a close relationship in time, place, modus operandi, scheme or plan).

█ We recognize that under Superior Court Rule 97-A(I)(A)(iii), the connection between charged offenses that occur during separate criminal episodes cannot rest solely upon the accused's propensity to engage in criminal conduct. For purposes of joinder, however, offenses stemming from separate criminal episodes may be "logically and factually connected" in a variety of ways that do not solely demonstrate a defendant's propensity to commit crime. *See, e.g., Smithers v. State*, 826 So. 2d 916, 924 (Fla. 2002) (two murders were meaningfully related because they occurred at same location and within two weeks of each other, were similar in nature and in manner perpetrated, and testimonial and confession evidence overlapped), *cert. denied*, 537 U.S. 1203 (2003); *Lewis*, 488 N.W.2d at 525 (two criminal episodes involving robbery, kidnapping and sexual assault on two victims properly joined because same crimes involved and they occurred within twenty-four hours at approximately the same time of night and in the same manner).

██ We observe that in their initial briefs, both the State and the defendant relied upon New Hampshire Rule of Evidence 404(b) precedents to calculate when charges arising from separate criminal episodes are related under Superior Court Rule 97-A(I)(A)(iii). We, however, ordered the parties to submit additional briefing on alternative approaches in the event we rejected a Rule 404(b) framework for assessing relatedness. Today, we expressly reject that Superior Court Rule 97-A(I)(A)(iii) requires the State to affirmatively prove that the charges would be mutually admissible in hypothetical separate trials under New Hampshire Rule of Evidence 404(b) in order to comprise related offenses. *Cf. Brown*, 156 N.H. at 444-45 (court's analysis of whether misjoinder constituted harmless error included reviewing whether charges would have been mutually admissible under Rule 404(b) in separate trials). When the State is using a defendant's prior bad act to prove a matter that is relevant to establishing his or her guilt of a charged crime, the exacting requirements of Rule 404(b) are appropriate. *See State v. Costello*, 159 N.H. 113, 118 (2009) (first prong of Rule 404(b) test is relevancy of the evidence for a purpose other than proving the defendant's character or disposition). In the context of

joinder, however, the purpose of consolidating related offenses that occur during separate criminal episodes is not to use the defendant's commission of bad acts underlying one charge to establish his guilt on another. Rather, it is to achieve efficiency and economy for both the government and the defendant. *See generally Ramos*, 149 N.H. at 123-24 (justifications for joinder). The jury ultimately must assess the defendant's guilt for each charge independently of the other offenses.

█ We also reject the defendant's argument that the propensity language requires the trial court to examine the prejudicial impact of joining multiple charges when assessing whether the charges are related. Any potential prejudice is a factor for the trial court to consider under the "best interests of justice" prong of Rule 97-A(I)(B). *See State v. Nelson*, 357 So. 2d 1100, 1102 (La. 1978) (court should examine a myriad of concerns giving rise to undue prejudice, including propensity inference, when determining whether to join multiple charges for a single trial).

█ With these guiding criteria, we turn to consider whether the trial court correctly concluded that the four drug transaction charges are related. The charges comprised a series of controlled buys that occurred within one mile of one another within about three weeks. Further, each transaction involved the defendant and the cooperating individual, and occurred inside the same car in the same manner and with the same narcotic exchanged for United States currency. Further, each offense charged the same crime, unlawful sale of a narcotic drug, and involved common witnesses, the same cooperating individual and primarily the same police officers. Moreover, the testimony for each charge would overlap regarding the contextual background of the case, as well as the surveillance evidence linking the defendant to the gray sedan.

As the trial court acknowledged, distinctions in evidence existed between the controlled buys with respect to identifying the car involved in the transactions and linking the defendant as the driver of the car at the time of the transactions. For example, the police conducted video surveillance in the first two buys and the cooperating individual wore a wiretap in the latter two buys. These distinctions, whether standing alone or cumulatively, do not diminish the strong connection between the charged offenses. *Cf. Hall*, 307 N.W.2d at 295 (four separate criminal incidents were closely related because they occurred in a span of eight days, within 6.5 miles of one another, and in the same manner); *Ford v. State*, 506 N.E.2d 835, 837 (Ind. Ct. App. 1987) (counts involving the same type of drug transaction and the same police officers at the same location within four days of each other were properly joined). Accordingly, we hold that the trial court did not commit an unsustainable exercise of discretion when it concluded that the

four drug offenses were logically and factually connected in a manner that did not solely demonstrate that the defendant had a propensity to engage in criminal conduct.

B

The defendant argues that joining the four drug charges caused him undue prejudice because it permitted the State to argue propensity and to rely upon the stronger evidence concerning the latter sales to improperly bolster its case on the earlier sales. We interpret the defendant's prejudice argument as contending that the trial court erroneously concluded that joinder did not offend "the best interests of justice" under Superior Court Rule 97-A(I)(B).

Under Superior Court Rule 97-A, upon motion by either party, the trial court is required to join related offenses for trial unless it determines that "joinder is not in the best interests of justice." SUPER. CT. R. 97-A(I)(B). This is a discretionary decision, subject to review under the unsustainable exercise of discretion standard. *See Ramos*, 149 N.H. at 120. Thus, to succeed on appeal, the defendant must demonstrate that the trial court's ruling was "clearly untenable or unreasonable to the prejudice of his case." *Id.* (quotation omitted).

We have yet to interpret "the best interests of justice" standard under Superior Court Rule 97-A(I)(B). We conclude, however, that this standard at least encompasses the considerations outlined in *Ramos*. Thus, charges should be tried separately whenever it "is deemed appropriate to promote a fair determination of the defendant's guilt or innocence," which includes evaluating "whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense." *Id.* at 128; *see also Nelson*, 357 So. 2d at 1102-03 (outlining potential problems arising from joint trial on numerous charges).

Joinder can give rise to other concerns of undue prejudice as well, which may cause the best interests of justice to override conducting a single trial. For example, some charges may be likely to unusually inflame the jury against the defendant. *See Alcala v. Superior Court*, 185 P.3d 708, 720 (Cal. 2008). Additionally, the State may gain an unfair advantage if a weak case is joined with a strong case: "the joint trial of offenses creates a significant risk that the jury will convict [a] defendant upon the weight of the accusations or upon the accumulated effect of the evidence." *Ramos*, 149 N.H. at 123 (quotation omitted); *see also Alcala*, 185 P.3d at 720. A defendant "can also be disadvantaged if the available defenses are inconsistent or if the defendant wants to testify as to one offense but not as to

others." *Ramos*, 149 N.H. at 123 (quotation omitted). Ultimately, in determining the best interests of justice, the purposes underlying joinder, *i.e.*, efficiency and economy, must give way when conducting a single trial would jeopardize a defendant's right to a fair trial. *See State v. Mason*, 150 N.H. 53, 61 (2003).

We now consider the trial court's conclusion that joinder would not offend the best interests of justice in light of the defendant's assertions of prejudice. The trial court ruled:

> In this case, there is little danger of the credibility of the confidential informant or the police officers in one episode being bolstered by the testimony of those in the other episodes. The confidential informant is the same and the police officers are principally the same. If the defendant successfully impeaches the credibility of the confidential informant or the police officers in one instance, such impeachment will effect the credibility of the witnesses in regard to their testimony as to all offenses. Even considering that only two of the transactions were recorded, since the same confidential informant is involved, there is no danger that the testimony of different witnesses to the various episodes could serve to bolster the testimony of different witnesses in regard to other episodes.

In challenging the trial court's decision, the defendant first argues that joinder of the four drug charges allowed the State to improperly rely upon the number of drug sales to prove his guilt, impermissibly relying upon a propensity inference. He contends that "[a]t the beginning of her closing, the prosecutor argued that the jury should accept [the cooperating individual's] testimony about the first buy, even though the police did not observe the buy or positively identify [the defendant] as the person in the car, because 'we had officers who testified that the defendant was in the car on the other three dates.'" He argues that the State improperly used the number of charges to argue propensity during closing argument in order to bolster its case on the first sale, which was supported by weaker evidence. Because the State does not contest whether trial events may be relevant to our review of the trial court's pretrial decision on joinder, we consider the defendant's arguments that, in part, are based upon trial events for purposes of this case. *But see McIntyre*, 151 N.H. at 470 (Broderick, C.J., dissenting) (emphasizing that appellate review of trial court's ruling on joinder should only be based upon the evidence before the motion judge); *cf. State v. Bassett*, 139 N.H. 493, 497 (1995) (scope of review of Rule 404(b) pretrial ruling limited to "the time of the State's proffer and the court's ruling thereon; namely, pretrial").

We disagree with the defendant's characterization of the State's comment during closing. The State acknowledged that the cooperating individual was the only eyewitness who identified the defendant as the person in the car at the first controlled buy. It went on to explain to the jury how to determine the credibility of the cooperating individual's testimony by identifying other corroborating evidence, including police officer testimony that the defendant was in the car on the other three occasions. This statement focused on the other evidence that linked the defendant to the gray car in order to bolster the cooperating individual's account that the defendant was the person in that same gray car during the first sale. The State did not argue that because the defendant conducted the latter three illegal sales, he must have conducted the first illegal sale. Nor did it argue that the stronger evidence supporting the latter three sales overcame the weaker evidence supporting the first sale.

To the extent the defendant argues that each drug sale was not relevant for any purpose other than propensity, we disagree. This argument assumes that in order to justify joinder, each offense must be mutually admissible in a hypothetical separate trial on the other offense. As stated above, mutual admissibility is not a threshold requirement for joinder under Superior Court Rule 97-A(I)(A)(iii). *Cf. Mason*, 150 N.H. at 62 (court's analysis of whether misjoinder constituted harmless error included reviewing whether evidence of other charged bad acts caused undue prejudice to the defendant).

The defendant next contends that joinder permitted the State to rely upon the stronger evidence underlying some of the drug sales to bolster the other charges. In particular, at the pretrial motion hearing, the defendant argued that to establish that he was the person in the gray car in the first two sales, the State relied solely upon the account of the cooperating individual, who lacked credibility. In contrast, the latter two sales were supported by evidence of an audio recording that documented contact between the defendant and the cooperating individual. Thus, according to the defendant, joining the charges allowed the State to rely upon the stronger evidence to seek convictions on the sales that were supported by considerably weaker evidence.

We conclude that the defendant has failed to establish that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. *See Ramos*, 149 N.H. at 120 (unsustainable exercise of discretion standard). In its ruling, the trial court recognized that some supporting evidence differed between the charges, such as the nature of the surveillance. It ruled, however, that there was no possibility that testimony on some charges would bolster the testimony of witnesses pertaining to the

other drug transactions because the cooperating individual was the key witness in each transaction. Essentially, the trial court decided that because the key witnesses were principally the same for the four drug transactions, the jury's decision on witness credibility would either bolster or diminish the evidence for all of the charges together. This decision was not an unsustainable exercise of discretion. Accordingly, we conclude that the defendant has failed to establish that the trial court erroneously concluded that joinder would not offend the best interests of justice.

## III

Finally, the defendant argues that the trial court erred in excluding evidence of the cooperating individual's prior conviction for witness intimidation. He contends that witness intimidation, like perjury, constitutes a crime of dishonesty or false statement and, thus, its admission was required under New Hampshire Rule of Evidence 609(a)(2). According to the defendant, he was prejudiced because exclusion of the prior conviction prevented the jury from accurately judging the cooperating individual's credibility, a key issue in the case.

We review the trial court's evidentiary ruling under an unsustainable exercise of discretion standard. *State v. Hebert*, 158 N.H. 306, 311 (2009). Thus, "the defendant bears the burden of demonstrating that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case." *Id.*

After the State concluded its direct examination of the cooperating individual, the defendant asked the trial court for permission to impeach the cooperating individual with prior convictions, including the witness intimidation conviction. The trial court denied the motion, ruling that the crimes did not show untruthfulness or dishonesty, but demonstrated propensity. We need not address the defendant's argument on appeal that the crime of witness intimidation constitutes a crime of dishonesty or false statement because we conclude that the defendant failed to provide sufficient documentation to the trial court as required under Rule 609(a)(2).

Rule 609(a)(2) provides:

> For the purpose of attacking the character for truthfulness of a witness, . . . evidence that any witness has been convicted of a crime shall be admitted regardless of the punishment, if it readily can be determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness.

The document recording the cooperating individual's past convictions appears to be a computer printout dated March 10, 2008, the day before the

defendant's trial began. Presumably, this is the document that the defendant gave to the trial court in support of his request to impeach the cooperating individual. The document shows that the convictions occurred in Massachusetts and lists various convictions, including witness intimidation. It does not provide any information that identifies the precise Massachusetts law that was violated, nor does it give any information whatsoever about the elements of the crime or the criminal conduct that the cooperating individual committed. We conclude that the document's generic reference to witness intimidation was insufficient for it to be "readily . . . determined that establishing the elements of the crime required proof or admission of an act of dishonesty or false statement by the witness" as required under Rule 609(a)(2). Accordingly, the defendant has failed to establish that the trial court's decision to exclude the evidence constituted an unsustainable exercise of discretion.

*Affirmed.*

DALIANIS and DUGGAN, JJ., concurred.