# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2016-0007, State of New Hampshire v. Ernesto Rivera, the court on July 2, 2024, issued the following order:

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order. See Sup. Ct. R. 20(2). The defendant, Ernesto Rivera, was convicted in Superior Court (Garfunkel, J.) on two counts of being a felon in possession of a gun, four counts of solicitation of witness tampering, and one count of possession of cocaine with intent to distribute. On appeal, the defendant argues: (1) that the trial court erred by denying his motion to sever the charges; and (2) that the recording of four convictions and imposition of four sentences for solicitation of witness tampering violated the defendant's double jeopardy rights and constituted plain error. We reverse and remand.

The record supports the following relevant facts. On May 5, 2013, the defendant, who was a convicted felon, and his friend Chantal Guertin took a gun safety class in Hudson, during which the defendant practiced shooting using Guertin's gun. On May 13, Guertin purchased a gun in Merrimack, filling out a firearm transaction record stating that she was the actual buyer of the firearm, but in fact the purchase was made for the defendant. Later that day the defendant took possession of the gun.

In August 2013, Guertin contacted the Nashua Police Department to inform them that she had purchased a gun for the defendant. Officer Hannigan obtained a statement from Guertin regarding that purchase. Based upon the information that Guertin provided, the Nashua police obtained a search warrant for the residence in Hudson, where the defendant lived together with Elvira Kersey. On August 20, Kersey arrived home to find the police searching the house. They seized a safe from the master bedroom, and told Kersey that they were looking for a gun, but had not found one. Thinking the gun might be in the safe, the police obtained a search warrant to open the safe. Inside they found 44 grams of cocaine.

On August 23, the defendant called Kersey, told her there was a gun in the house and where it was located, and directed her to find it and "[t]ake it off the house." Kersey thereafter found the gun, and reported its location to the police, who obtained a search warrant, returned to the house, and seized the gun.

In December 2013, while incarcerated at the Hillsborough County House of Corrections, the defendant placed several telephone calls that resulted in the four charges of solicitation of witness tampering. The first charge arose from two calls made on December 9 to his friend Rene Lavoie, in which the defendant allegedly asked him to speak with Kersey in order to induce her to recant. The second charge arose from a call made to Lavoie on December 10, in which the defendant again allegedly asked him to speak with Kersey in order to induce her to recant. The third and fourth charges arose from a single call made to Katherine Vitale on December 11. The defendant allegedly asked Vitale: (1) to "introduc[e]" Lavoie to Kersey's residence so that Lavoie could speak with Kersey in order to induce her to recant; and (2) to transport Lavoie to Kersey's residence so that Lavoie could speak with Kersey in order to induce her to recant.

Prior to trial, the defendant sought to sever the charges. The Superior Court (Temple, J.) ruled that the seven charges at issue in this appeal could be tried together.[1]

On appeal, the defendant argues that the trial court erred by failing to sever the two felon in possession charges both from the drug and witness tampering charges and from each other. He also argues that double jeopardy prevents the entry of four convictions for solicitation of witness tampering, asserting that only one conviction could be entered. Acknowledging that the double jeopardy issue was not raised in the trial court, the defendant raises it now as plain error. See Sup. Ct. R. 16-A.

Joinder of charges is governed by New Hampshire Rule of Criminal Procedure 20. If offenses are unrelated, they may be joined only with the defendant's consent. See N.H. R. Crim. P. 20(a)(3).[2] Offenses are related if they:

---

[1] The defendant's motion to sever stated that the defendant stood accused of: (1) criminal threatening and five simple assaults with an incident date of July 21, 2013; (2) six simple assaults with an incident date of August 30, 2013; (3) two counts of possession with intent to distribute with incident dates of July 21, 2013 and August 20, 2013; (4) one count of felon in possession and armed career criminal with an incident date of May 5, 2013; (5) one count of felon in possession and armed career criminal with an incident date of August 23, 2013; (6) one count of felon in possession and armed career criminal with an incident date of May 13, 2013; and (7) seven counts of witness tampering with incident dates ranging from November 27, 2013 to February 19, 2014. The defendant sought to sever the indictments so that there would be seven separate trials. The trial court granted the motion in part and denied it in part, ruling that three separate jury trials would be scheduled. The seven charges here on appeal were joined as one of those three trials.

[2] At the time of trial, the joinder rule in effect was former Superior Court Rule 97-A. See State v. Rivera, 175 N.H. 496, 497-98 (2022). The relevant provisions of Rule 97-A are identical to the corresponding provisions of the current rule, New Hampshire Rule of Criminal Procedure 20. Because both rules use the same language, we refer to and rely upon the current rule, Rule 20, in this order. See id.

(A) Are alleged to have occurred during a single criminal episode; or

(B) Constitute parts of a common scheme or plan; or

(C) Are alleged to have occurred during separate criminal episodes, but nonetheless, are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct.

N.H. R. Crim. P. 20(a)(1). If offenses are related, they shall be joined "unless the trial judge determines that joinder is not in the best interests of justice." N.H. R. Crim. P. 20(a)(2). The parties agree that we should review the trial court's ruling on joinder for an unsustainable exercise of discretion. To show the trial court's decision is unsustainable, the defendant must demonstrate that the ruling was clearly untenable or unreasonable to the prejudice of his case. State v. Brown, 159 N.H. 544, 550 (2009).

We begin by considering whether the felon in possession charge arising from the gun safety class (the gun safety charge) should have been severed from the other charges. In denying the defendant's motion to sever, the trial court relied upon Rule 20(a)(1)(C), concluding that the charges were logically and factually connected in a manner that did not solely demonstrate that the accused had a propensity to engage in criminal conduct. In Brown, we explained:

> [W]hether offenses that occur during separate criminal episodes are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct is largely determined by the close relationship among the offenses with respect to both the underlying charged conduct and the evidence to be used to prove the charges. The following factors will aid in discerning whether charges arising from separate criminal episodes are related: (1) the temporal and spatial relationship among the underlying charged acts; (2) the commonality of the victim(s) and/or participant(s) for the charged offenses; (3) the similarity in the defendant's mode of operation; (4) the duplication of law regarding the crimes charged; and (5) the duplication of witnesses, testimony and other evidence related to the offenses.
>
> No single factor is dispositive on the question of relatedness.

Id. at 551-52 (quotations and citations omitted).

Here, we note that the gun safety charge involved a different gun possessed at a different time and place from the other charges. With respect to the defendant's "mode of operation," the gun safety charge involved his temporary possession of a gun owned by another in the public setting of a gun safety class — we find little similarity between this and the defendant's mode of

operation regarding any of the other charges. Although the gun safety charge involved a duplication of law with respect to the other gun charge, there was no duplication of law with respect to the drug and witness tampering charges. Finally, the testimony of at least five of the State's witnesses related solely to the gun safety charge. The only "overlap" witness who offered substantial testimony both on the gun safety charge and other charges was Guertin. After considering all of the Brown factors, we agree with the defendant that the trial court unsustainably exercised its discretion when it concluded that the gun safety charge was related to the other charges.

We reach a different result, however, with respect to the felon in possession charge related to the defendant's possession of a gun that Guertin had purchased on May 13 (the May 13 gun charge). It was primarily Guertin's statements to the police regarding this event that provided the probable cause for the search of the defendant's residence that led to the discovery of the cocaine. The gun and cocaine were both found in the defendant's home. There would be greater duplication of witnesses, testimony, and other evidence were the May 13 gun charge to be severed from the drug and witness tampering charges. The defendant's attempts to solicit others to urge Kersey to recant related to testimony that Kersey would provide regarding the gun that was the subject of the May 13 gun charge. After considering all of the Brown factors, we conclude that the defendant has failed to demonstrate that the trial court unsustainably exercised its discretion by concluding that the May 13 gun charge was related to the other charges.

The defendant argues, in the alternative, that even if the May 13 gun charge is related to the drug charge, the trial court erred in failing to sever it in the best interests of justice. Rule 20(a)(2) provides that when a party moves for joinder of related offenses, the trial judge "shall join the charges for trial unless the trial judge determines that joinder is not in the best interests of justice." N.H. R. Crim. P. 20(a)(2).

> Under this "best interests of justice" standard, charges should be tried separately whenever it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence — in essence, when conducting a single trial would jeopardize the defendant's right to a fair trial. In making a "best interests of justice" determination, trial courts must evaluate whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of fact will be able to distinguish the evidence and apply the law intelligently to each offense. The "best interests of justice" inquiry may also involve consideration of other factors, including whether: some charges are likely to unusually inflame the jury against the defendant; the evidence in support of some offenses is weak while the proof of others is strong; the

4

defendant's available defenses for different crimes are inconsistent; or the defendant wishes to testify as to one offense but not as to others.

Rivera, 175 N.H. at 502 (quotations and brackets omitted).

After considering the defendant's arguments in light of the relevant factors to be considered under the "best interests of justice" standard, we are unpersuaded that joining these charges jeopardized the defendant's right to a fair trial.

Next, we consider the defendant's arguments that the trial court committed plain error by recording four convictions and imposing four sentences for solicitation of witness tampering. "To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings." State v. Russell, 159 N.H. 475, 489 (2009) (quotation omitted). The defendant argues that the four indictments for solicitation of witness tampering allege a single offense, and therefore the multiple convictions and sentences violate the double jeopardy protections of the State and Federal Constitutions. See N.H. CONST. pt. I, art. 16; U.S. CONST. amends. V, XIV. The parties agree that this case presents a "unit of prosecution" question. See State v. Ramsey, 166 N.H. 45, 51 (2014).

As noted above, the four indictments involved telephone calls made by the defendant on December 9 and 10, 2013 to Lavoie, and on December 11, 2013 to Vitale. The defendant argues that all four charges involved a single effort to influence the testimony of the same witness — Kersey — in the same proceeding, and therefore constitute a single unit of prosecution. The variant of witness tampering at issue here is set forth in RSA 641:5, I(a) (2016), and prohibits, in relevant part, "attempt[ing] to induce or otherwise cause a person to . . . [t]estify or inform falsely." RSA 629:2, I (2016), in turn, provides that a "person is guilty of criminal solicitation if, with a purpose that another engage in conduct constituting a crime, he commands, solicits or requests such other person to engage in such conduct."

The defendant argues that the evil the legislature intended to criminalize is the attempt to induce a witness not to testify or to testify falsely. Therefore, he argues, the number of attempts to induce a witness is secondary to that aim. The State responds that the unit of prosecution is each act of solicitation.

"Because the substantive power to prescribe crimes and determine punishments is vested with the legislature, the question under the Double Jeopardy Clause whether punishments are 'multiple' is essentially one of legislative intent." State v. Martinko, 171 N.H. 239, 245 (2018) (quotation omitted). The defendant concedes that we have not previously addressed the question of the unit of prosecution for solicitation. "When the law is not clear

at the time of trial and remains unsettled at the time of appeal, a decision by the trial court cannot be plain error." State v. Panarello, 157 N.H. 204, 209 (2008). Accordingly, we conclude that the defendant has not shown that treating the events on December 9, 10, and 11 as separate units of prosecution constituted plain error.[3]

Lastly, however, we agree with the defendant that his two convictions and sentences arising out of the single phone call on December 11 to Vitale constitute plain error. In that phone call, the defendant urged Vitale to contact Lavoie, and stated:

> you . . . guys can meet up where you can bring him to show him around the yard — the house and also call [Kersey] so . . . she don't get . . . startled . . . send her a text or a call and say hey you know I'm gonna be with . . . one of Ernie's friends – don't be startled if you see . . . us or if this guy is gonna talk to you not to be afraid you know . . . and let her know that . . . he really wants to get me out and help me out so . . . it's very . . . crucial that . . . we put something together with this guy.

One indictment based on this phone call alleged that the defendant requested that Vitale "promote or facilitate the commission of the crime of Witness Tampering by introducing . . . Lavoie to . . . Kersey's residence so . . . Lavoie could speak with . . . Kersey in order to induce her to recant her statement and inform falsely," while the second indictment alleged that the defendant requested that Vitale "promote or facilitate the commission of the crime of Witness Tampering by transporting . . . Lavoie to . . . Kersey's residence so . . . Lavoie could speak with . . . Kersey in order to induce her to recant her statement and inform falsely." (Emphases added.)

"To determine whether charged offenses violate the double jeopardy protections of our State Constitution in unit of prosecution cases, we examine whether proof of the elements of the crimes as charged will require a difference in evidence." State v. Woodbury, 172 N.H. 358, 368 (2019) (quotation omitted). We agree with the defendant that proof of the elements of these two offenses as charged, one alleging that the defendant asked Vitale to introduce Lavoie to Kersey's residence while the other alleges that the defendant asked Vitale to transport Lavoie to Kersey's residence, would not require a difference in evidence. We further conclude that the error was plain, affected substantial rights, and seriously affected the fairness, integrity or public reputation of judicial proceedings.

---

[3] Although we find no plain error with respect to treating the events of December 9, 10, and 11 as separate units of prosecution, we express no opinion as to whether doing so constitutes error. The parties may address that issue on remand.

6

Because we conclude that the trial court erred by joining the gun safety charge with the other charges, and because the State has not argued harmless error, we reverse the defendant's convictions and remand.  See State v. Brown, 156 N.H. 440, 445 (2007); State v. Morrill, 154 N.H. 547, 553 (2006); State v. Kirsch, 139 N.H. 647, 656 (1995).  On remand, however, the defendant may not again be convicted and sentenced on both indictments arising out of the December 11 phone call.

Reversed and remanded.

BASSETT and COUNTWAY, JJ., concurred; NADEAU J., retired superior court chief justice, specially assigned under RSA 490:3, II, concurred; HANTZ MARCONI, J., sat for oral argument but subsequently disqualified herself and did not participate in further review of the case.

**Timothy A. Gudas,**
**Clerk**