**THE STATE OF NEW HAMPSHIRE**

**SUPREME COURT**

**In Case No. 2022-0628, <u>State of New Hampshire v. Bradley Caprarello</u>, the court on April 10, 2025, issued the following order:**

The court has reviewed the written arguments and the record submitted on appeal, has considered the oral arguments of the parties, and has determined to resolve the case by way of this order.  <u>See</u> <u>Sup. Ct. R.</u> 20(3).  The defendant, Bradley Caprarello, was convicted after a jury trial in Superior Court (<u>Delker</u>, J.) on four counts of aggravated felonious sexual assault (AFSA), RSA 632-A:2 (Supp. 2024), and six counts of nonconsensual dissemination of private sexual images (dissemination), RSA 644:9-a (Supp. 2024).[1]  On appeal, the defendant argues that the trial court erred by denying his motion to sever the AFSA charges from the dissemination charges, and by failing to dismiss one of the dissemination charges for insufficient evidence.  We conclude that the trial court did not err.  Accordingly, we affirm.

The jury could have found the following facts.  In September 2016, the victim began dating the defendant.  She moved in with him about six months later.  The victim, who was a very heavy sleeper, believed that the defendant was engaging in nonconsensual sexual penetration with her while she was asleep.  In March 2018, the victim broke up with the defendant.  In February 2019, she received a Facebook message from a man she did not know informing her that there were images of her online and providing two links.  Using the links, the victim discovered photos and videos that were sexual in nature, including videos of the defendant having sex with her while she was asleep, on two websites: PornHub and XVideos.  The postings had been made without her knowledge or consent, and included her full name and sexually derogatory hashtags as well as hashtags indicating that the victim was asleep at the time the videos were taken.  The PornHub posting also included the victim's Snapchat account and cellphone number and invited viewers to send pictures of their genitalia to the victim.

The police were notified.  Detective Flanagan discovered that the IP address provided by PornHub was linked to the defendant's residence.  He interviewed the defendant in April 2019.  The defendant admitted uploading the images, stating that he did not think the victim would care.  When asked if

---

[1] Because several of the charges were alternative AFSA theories, the trial court did not sentence the defendant upon them and held them in abeyance, stating that if the defendant's convictions are affirmed on appeal, those convictions will be dismissed.

PornHub and XVideos were the only two sites on which he posted the images, he responded: "That's it."

The defendant was charged with four counts of AFSA and five counts of dissemination. In May 2020, the victim informed the police that she found many of the same photos posted on another website — Tumbex. The website indicated that the images had been posted "one year ago."

At a scheduling conference on June 22, 2020, the State informed the court in the defendant's presence that it was investigating "similar conduct" involving the victim. Although the State did not identify Tumbex, when the police attempted to access that site the next day, the webpage containing images of the victim was no longer there. The defendant was subsequently charged with an additional count of dissemination related to the images posted on Tumbex. The trial court joined the AFSA charges with the dissemination charges for trial.

Prior to trial, the defendant moved to sever the AFSA charges from the dissemination charges. The trial court denied the motion. The defendant was convicted on all of the charges. The defendant moved to set aside the verdicts and for a mistrial, arguing that he was prejudiced by the trial court's failure to sever the charges because the evidence presented inflamed the jury and caused the jurors to "render[] an emotional verdict rather than one based on due care and fairness in their deliberations." The trial court denied the motion. This appeal followed.

The defendant raises two issues on appeal: first, whether the trial court erred by joining the ASFA and dissemination charges; and second, whether the trial court erred by failing to dismiss the dissemination charge related to Tumbex for insufficient evidence. We begin by addressing the trial court's decision to join the charges.

We will uphold the trial court's decision to join charges unless it constitutes an unsustainable exercise of discretion. State v. Brown, 159 N.H. 544, 550 (2009). To establish an unsustainable exercise of discretion, the defendant must demonstrate that the trial court's ruling was clearly untenable or unreasonable to the prejudice of his case. Id. We note that the State does not contend that trial events are irrelevant to our review of the trial court's pretrial decision on joinder. Accordingly, we consider the defendant's arguments that, in part, are based upon trial events. See id. at 556.

Under New Hampshire Rule of Criminal Procedure 20, if the State requests that the trial court join charges alleging multiple "related offenses" brought against a single defendant, the court "shall join the charges for trial unless the trial judge determines that joinder is not in the best interests of justice." N.H. R. Crim. P. 20(a)(2). Accordingly, our review of permissive

2

joinder of offenses involves two steps.  State v. Rivera, 175 N.H. 496, 498-99 (2022).  First, we must determine whether the trial court erred in concluding that the offenses are related.  See N.H. R. Crim. P. 20(a)(1)-(2); Rivera, 175 N.H. at 499.  If the court properly found the offenses related, we then consider whether it nevertheless erred in joining the offenses for trial because their joinder was not in the best interests of justice.  See N.H. R. Crim. P. 20(a)(2); Rivera, 175 N.H. at 499.

On appeal, the defendant argues that the trial court erred in concluding that the AFSA and dissemination charges were related and that joinder would not offend the best interests of justice.  We disagree.

We turn first to the issue of relatedness.  Two or more offenses alleged to have occurred during separate criminal episodes are "related" if they "are logically and factually connected in a manner that does not solely demonstrate that the accused has a propensity to engage in criminal conduct."  N.H. R. Crim. P. 20(a)(1)(C).  Whether multiple offenses are "logically and factually connected" is a matter that "is largely determined by the close relationship among the offenses with respect to both the underlying charged conduct and the evidence to be used to prove the charges."  Brown, 159 N.H. at 551.  The following factors are relevant in assessing relatedness:

> (1) the temporal and spatial relationship among the underlying charged acts; (2) the commonality of the victim(s) and/or participant(s) for the charged offenses; (3) the similarity in the defendant's mode of operation; (4) the duplication of law regarding the crimes charged; and (5) the duplication of witnesses, testimony and other evidence related to the offenses.

Id. at 551-52.  No single factor is dispositive on the question of relatedness.  Id. at 552.  Rather, the factors outlined above are intended to serve as guidelines that must be sensibly applied in accord with the purposes of joinder.  Id.

The purposes of joinder are "to avoid the duplication of evidence required by separate trials, to reduce the inconvenience to victims and witnesses, to minimize the time required to dispose of the offenses, and to achieve a variety of other economies in connection with prosecutorial and judicial resources."  Id. at 552 (quotation omitted).  Or, in other words, joinder is intended "to achieve efficiency and economy for both the government and the defendant."  Id. at 554.

The defendant argues that the trial "court overweighted the fact that the victim and law-enforcement witnesses would have testified at separate trials and underweighted the significant differences between the charges in their spatial and temporal relationship, mode of operation, and applicable law."  We disagree.

3

The charges were temporally and spatially related. A person commits the crime of dissemination when the person: (1) obtains an image under circumstances in which a reasonable person would know that the person in the image intended for it to remain private; (2) knew or should have known that the person in the image did not consent to its dissemination; and (3) purposely disseminates the image with the requisite intent. See RSA 644:9-a, II. Here, two out of the three elements of the dissemination charges are temporally and spatially related to the AFSAs. The conduct forming the basis of the AFSA charges occurred contemporaneously with the creation of, and is the conduct depicted in, several of the images and videos that were posted on the Internet. Given the circumstances under which the images were created, the defendant knew that the victim would have intended for the images to remain private and knew or should have known that the victim did not consent to their dissemination. See id. Accordingly, we cannot say that the charges are not temporally or spatially related.

On balance, the other Brown factors also weigh in favor of joinder. The victim and defendant were the same for both the AFSA and dissemination charges and there were no other participants. Brown, 159 N.H. at 552. Although the charges arose under separate statutes, the conduct giving rise to the AFSAs was the same conduct depicted in several of the posted images. Further, as the trial court noted, the critical legal issue for both the AFSA and dissemination charges was lack of consent or knowledge by the victim. Compare RSA 632-A:2, with RSA 644:9-a. Additionally, had the charges been severed, the primary witnesses — the victim and the investigating detective — would have had to give duplicative testimony at both trials authenticating the photos and videos and identifying the defendant and the victim. Accordingly, we conclude that the trial court did not commit an unsustainable exercise of discretion when it determined that the AFSA and dissemination charges were logically and factually connected in a manner that did not solely demonstrate that the defendant had a propensity to engage in criminal conduct. See Brown, 159 N.H. at 554-55.

Having concluded that the trial court properly found the charges related, we turn to whether it nevertheless erred in joining the charges for trial because their joinder was not in the best interests of justice. See N.H. R. Crim. P. 20(a)(2). The trial court's "best interests of justice" determination is subject to our unsustainable exercise of discretion standard of review. Rivera, 175 N.H. at 502.

Under the best interests of justice standard, charges should be tried separately whenever it is deemed appropriate to promote a fair determination of the defendant's guilt or innocence — in essence, when conducting a single trial would jeopardize the defendant's right to a fair trial. Id. In making that determination, trial courts must evaluate whether, in view of the number of offenses charged and the complexity of the evidence to be offered, the trier of

fact will be able to distinguish the evidence and apply the law intelligently to each offense. Id. The best interests of justice inquiry may also involve consideration of other factors, including whether: some charges are likely to unusually inflame the jury against the defendant; the evidence in support of some offenses is weak while the proof of others is strong; the defendant's available defenses for different crimes are inconsistent; or the defendant wishes to testify as to one offense but not as to others. Id.

The defendant argues that joining the charges was likely to "unusually inflame the jury against the defendant" and provoke the jurors' impulse to punish. The defendant additionally asserts that the trial court "failed to recognize that [an] overwhelming risk of unfair prejudice would and did result from exposing the jury to two sets of inflammatory evidence." We disagree.

As the trial court observed in its pretrial ruling, given that the dissemination charges involved evidence "that the defendant used highly sexually derogatory language to describe the alleged victim and invited strangers to send her pictures of their genitalia," the "evidence introduced in support of the . . . AFSA [charges] will not inflame the jury significantly more than evidence the jury will hear[] about the Dissemination charges." Nor are we persuaded that the jury was exposed to two separate sets of inflammatory evidence. The evidence for the AFSA charges was essentially the same as the evidence for the dissemination charges — videos and images, disseminated by the defendant, that depicted the AFSAs. Put another way, had there been two separate trials, it is likely that much of the evidence presented at the AFSA trial would have been presented again at the dissemination trial.

Accordingly, when the risk of prejudice to the defendant is weighed against the efficiency and economy for both the government and the defendant that resulted from joining the charges, we cannot say that the trial court's decision was clearly untenable or unreasonable to the prejudice of his case. See Brown, 159 N.H. at 557. To the extent that the defendant raises other best interest of justice arguments, he did not adequately develop them, and we deem them waived. See State v. Barnes, 150 N.H. 715, 720 (2004) (inadequately developed arguments are waived).

Finally, the defendant argues that the trial court committed plain error by failing to dismiss the dissemination charge related to the Tumbex website for insufficient evidence. He asserts that, because the evidence that the defendant uploaded the images to Tumbex was solely circumstantial, no rational trier of fact could conclude beyond a reasonable doubt that it was the defendant rather than "an automated process or unknown operator" who disseminated the images on Tumbex. The State counters that there was sufficient evidence to convict the defendant on the Tumbex charge. We agree with the State.

5

The defendant and the State agree that we should review the defendant's sufficiency argument for plain error. Under the plain error rule, we may consider errors not raised before the trial court. State v. Hodges, 176 N.H. 751, 754 (2024); see Sup. Ct. R. 16-A. However, the rule should be used sparingly, its use limited to those circumstances in which a miscarriage of justice would otherwise result. Hodges, 176 N.H. at 754. To find plain error: (1) there must be an error; (2) the error must be plain; (3) the error must affect substantial rights; and (4) the error must seriously affect the fairness, integrity or public reputation of judicial proceedings. Id.

With respect to the first prong of plain error review, we objectively review the record to determine whether any rational trier of fact could have found the essential elements of nonconsensual dissemination of private sexual images beyond a reasonable doubt, considering all the evidence and all reasonable inferences therefrom in the light most favorable to the State. See State v. Houghton, 168 N.H. 269, 271 (2015). Because a challenge to the sufficiency of the evidence raises a claim of legal error, our standard of review is de novo. Id. Further, because the defendant argues — and the State does not contest — that the State relied solely upon circumstantial evidence to prove the Tumbex charge, we will assume without deciding that the evidence supporting the Tumbex charge was circumstantial. Id.

When the evidence is solely circumstantial, it must exclude all reasonable conclusions except guilt. Id. The defendant has the burden of demonstrating that the evidence was insufficient to prove guilt. Hodges, 176 N.H. at 754. Thus, we evaluate the evidence in the light most favorable to the State and determine whether the alternative conclusion is sufficiently reasonable that a rational juror could not have found proof of guilt beyond a reasonable doubt. Houghton, 168 N.H. at 271. The proper analysis is not whether the evidence excludes every possible conclusion consistent with innocence, but whether it has excluded all reasonable conclusions other than guilt. State v. Seibel, 174 N.H. 440, 445 (2021). We do not determine whether the defendant has suggested another possible hypothesis that could explain the events in an exculpatory fashion. Id.

The Tumbex indictment alleged, in pertinent part, that the defendant "commit[ted] the crime of nonconsensual dissemination of private sexual images . . . when he uploaded images of [the victim] engaged in a sexual act or with [her] intimate parts exposed to" Tumbex. "Disseminate" is defined as "to import, publish, produce, print, manufacture, distribute, sell, lease, exhibit, or display." RSA 644:9-a, I(a). Thus, to support the additional dissemination charge, the State had the burden of proving beyond a reasonable doubt that the defendant published or displayed the images on Tumbex.

The record before us does not demonstrate that each of the sexual images on Tumbex was also posted on at least one of the other sites.

6

Therefore, a rational trier of fact could have found beyond a reasonable doubt that the circumstantial evidence — the Tumbex images themselves, the near match of those images to the ones posted on PornHub and XVideos, the victim's testimony that she never posted to Tumbex, and the timing of the removal of the images from Tumbex — excluded a conclusion that the sexual images were uploaded to Tumbex by an automated process or by some person other than the defendant.

Considering all the evidence and reasonable inferences therefrom in the light most favorable to the State, we conclude that a rational trier of fact could have found beyond a reasonable doubt that the defendant disseminated the images of the victim to Tumbex. It, therefore, was not error to submit this charge to the jury. See Houghton, 168 N.H. at 274.

Accordingly, the defendant has not shown plain error and the defendant's conviction on this charge is affirmed. The remaining arguments that the defendant raised regarding whether there was sufficient evidence to convict the defendant on the Tumbex charge do not warrant further discussion. See Vogel v. Vogel, 137 N.H. 321, 322 (1993).

In sum, we conclude that the trial court did not err when it ruled that the ASFA charges were related to the dissemination charges and determined that joinder would not offend the best interests of justice. Nor was it error for the trial court to fail to dismiss the Tumbex dissemination charge for insufficient evidence. Accordingly, we affirm.

Affirmed.

BASSETT, DONOVAN, and COUNTWAY, JJ., concurred.

**Timothy A. Gudas,
Clerk**